## JAMES S. GOODMAN *v.* STATE OF MARYLAND

[No. 23, September Term, 1967.]

*Decided November 27, 1967.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Robert S. Bourbon,* with whom was *Rita C. Davidson* on the brief, for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *William Paton, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On August 9, 1966, the appellant was convicted by a jury in the Circuit Court for Montgomery County under the second count of an information charging that he "* * * did utter and pass as true a certain false, forged and counterfeited prescription for medicine, to wit: "Azo Gantrisine," said prescription purporting to have been made by a regular practicing physician, knowing the same prescription to be falsely made, forged and counterfeited * * *." He was sentenced to imprisonment for a term of 18 months.

The offense of which the appellant was convicted is a statutory misdemeanor proscribed by Md. Code, (1967 Repl. Vol.), Art. 27, § 55, reading in pertinent part as follows:

> "If any person * * * shall utter or pass, knowing it to be falsely made, altered, forged or counterfeited, any * * * prescription * * * or other device purporting to have been made by a regular practicing physician, for any drugs, (or) medicines, he shall be deemed guilty of a misdemeanor * * *."

Thus the burden was on the State to produce evidence sufficient to show, or support a rational inference, as elements of the crime charged, that the appellant:

1) uttered or passed a prescription
    a) purported to have been made by a regular practicing physician
    b) for a drug or medicine; and
2) knew the prescription was falsely made, altered, forged or counterfeited.

The prescription in question, admitted in evidence without objection, had the appearance of authenticity. It was of a size commonly used by physicians and had imprinted at the top thereof the name of "JAMES R. BARTON, M.D., UROLOGIST, Reg. No. 5245, 4508 College Ave., College Park, Md., Telephone 779-9807, office hours by appointment only." There was a line following the printed word "name" and a line following the printed word "address" on which was written "George Weiss, 810 Gilbert St., Takoma Park, Md." On the line following the printed word "date" was written "8-26-65." The symbol "R/" was imprinted, and in writing,

"Azo Gantrisine /500
Tab. ♯    1
_____

xxx
Sig: one tab. t i d"

It was signed "James R. Barton" after which was imprinted "M.D." On the lower left hand side was imprinted "Refill 0-1-2-3-4 PRN." All those parts of the prescription in writing

appeared to have been written by the same hand. There was no indication, from the prescription itself, that it had been "altered" and it clearly purported on its face, that it had been made by a physician practicing in Maryland. One of the burdens of the State, therefore, was to prove that the prescription was falsely made, forged or counterfeited, for if it was, it may be rationally inferred that the appellant so knew, in the absence of sufficient credible evidence to prove otherwise. If there was a James R. Barton, M.D., the obvious way to prove the prescription was false would be by the direct testimony of Dr. Barton to that effect. If there was no James R. Barton, M.D., it would have to be shown that the person purporting to have signed the prescription was fictitious, or that if he did in fact exist, he was not a "regular practicing physician." The State attempted to prove that there was no regular practicing physician by the name of James R. Barton and proffered the testimony of an employee of the C. & P. Telephone Company. This witness testified that he had in court records concerning telephone number 779-9807. They were records kept in the regular course of business by the telephone company, and while the witness knew "the manner in which they were kept," they were not kept by him nor was he responsible for them. The records showed "coin box placement," that a telephone was installed with that number and the date of installation. He said he had once seen the telephone assigned the number in question but did not say when. He testified over objection, that the records showed that telephone number 779-9807 was an out-door booth in the shopping center at 7320 Baltimore Avenue, College Park, Maryland, that it was installed on December 18, 1963 and "has been in continuous service ever since." The records referred to were not proffered or admitted in evidence.

Md. Code, (1965 Repl. Vol.), Art. 35, § 59 provides that any writing or record made as record of any act, transaction, occurrence or event in the regular course of any business shall be admissible in evidence in proof of said act, transaction, occurrence or event. All circumstances of the making of such record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight but not the admissibility thereof. The rule applies in criminal as well as civil cases. *Lau-*

*der v. State,* 233 Md. 142; *Dunn v. State,* 226 Md. 463. The statute permits the introduction of business records even though hearsay in nature, when the entry meets the test of "necessity and circumstantial guaranty of trustworthiness." *Morrow v. State,* 190 Md. 559, 562. Summaries or compilations made from such records may be admissible, when a proper foundation has been laid by a qualified witness on the stand. *O'Donnell v. State,* 188 Md. 693. A witness called to the stand and qualified, *after records have been put into evidence,* may testify as to his conclusion therefrom. *Smith v. Jones,* 236 Md. 305. In the instant case, however, the records were not in evidence. The witness was asked, "(W)hat do your records show about this telephone?" and his reply indicated his conclusion as to what they showed. It does not appear that he read directly from the records. We do not think that the exception to the hearsay rule, permitted by the statute, goes this far. See *Jones v. State,* 205 Md. 528. We feel that the trial court erred in allowing the testimony in evidence, although the records themselves may have been admissible. Once admitted, the witness, if properly qualified, could have testified as to his conclusion therefrom. Other evidence produced by the State in its efforts to prove that James R. Barton, M.D. did not exist are at best minimal. The pharmacist to whom the prescription was presented and who filled it, testified that, although he had been a pharmacist in the Silver Spring area for about 20 years and was familiar with doctors "around this area," he had never heard of Dr. Barton. He checked "in the telephone book" (what telephone book is not specified) but did not find a Dr. James R. Barton listed at the address given in the prescription. He called the telephone number but the result of the call is not a part of the record. An employee of the pharmacist testified with respect to the matter. Although objections were made to parts of his testimony, there was in evidence that he heard the pharmacist make a telephone call, that the pharmacist looked in the telephone book (what book is again not specified) and that the pharmacist "made another phone call, as a result of which, there was no such narcotic number registered to a physician." This last call apparently had reference to "Reg. No. 5245" appearing on the prescription, but there was no evidence that this purported to

be a narcotic number or what was the source of the informa-
tion resulting in the conclusion that there was no such narcotic
number. The employee further testified that he did not know a
James R. Barton, M.D. but that he was not familiar with all
the doctors in the area. In view of all the testimony on the mat-
ter we cannot say that the admission of the objectionable testi-
mony of the employee of the C. & P. Telephone Company was
not prejudicial. At a bench conference the Assistant State's At-
torney said:

> "(H)ow is the State ever going to prove a fictitious
> doctor, a regular practicing physician. * * * We are
> relying on a telephone number that the telephone man
> said went to an outside telephone booth, and that the
> address stated was not the address there, and this testi-
> mony came in without objection, that this telephone
> number had not been issued to this physician."

The record is clear that timely objection was made to the tes-
timony. We point out also that every person practicing medi-
cine in this State must be licensed, the license must be recorded
in the office of the clerk of the circuit court in the county in
which the licensee resides, and that every person holding such
a license must register with the Board of Medical Examiners.
Each registration shall include the licensee's office address, tele-
phone number and whether or not he is in active practice. Md.
Code, (1965 Repl. Vol.) Art. 43, § 128-135. The State did not
avail itself of these records. In any event we cannot speculate on
the weight given the objectionable testimony by the jury and
must find that its admission was so prejudicial as to constitute
reversible error. See *Barnes and Burgess v. State,* 1 Md. App.
123.

In view of our holding we do not decide other contentions
raised by the appellant.

*Judgment reversed; case remanded
for a new trial.*