## THOMAS JOHN HUTCHINSON *v.* STATE OF MARYLAND

[No. 682, September Term, 1976.]

*Decided May 13, 1977.*

The cause was argued before MORTON, POWERS and MASON, JJ.

*George E. Burns, Jr.*, and *Martha Villmoare, Assistant Public Defenders*, with whom was *Alan H. Murrell, Public Defender*, on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Harvey Greenberg, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

The facts in this case are simple, because they are uncomplicated, yet bizarre, because they defy explanation.

The appellant, Thomas J. Hutchinson, was a prisoner in the Maryland Penitentiary, serving a 20 year sentence imposed after his conviction in 1970 of armed robbery. On 15 December 1973, he was a member of a work detail in the dietary department of the prison. Sgt. Purnell, a correctional officer in charge of the work detail, testified that he saw the appellant at 5:40 P.M. that day when he ordered the work detail, including appellant, to return to the West Wing where they were housed. Sgt. Purnell watched Hutchinson and the rest of the detail leave the dietary department, a separate building within the prison confines, and enter the rotunda, an area leading to the West Wing cell house. Once through the doors to this building, Hutchinson and the detail were out of Sgt. Purnell's view.

The group was instructed to proceed from the rotunda through two sets of doors, past the Traffic Control Office and on to a storeroom where Sgt. Jednorski awaited them. Sgt. Jednorski's duty that evening was to check off the names of the prisoners assigned to the dietary department work detail, as they returned to the West Wing. This check was made to insure that the inmates actually did return from work. Sgt. Jednorski testified that all the members of the detail returned from the kitchen area except Hutchinson. When the appellant did not appear, the officer testified that he telephoned Sgt. Purnell in the dietary department to inquire about Hutchinson. Upon being told that appellant had already left, Sgt. Jednorski requested a search of the prison. A search was made. The appellant was not to be found. In fact, he was not seen at the penitentiary again until he returned on 16 May 1975. He had been taken into custody in Los Angeles, California.

Hutchinson testified, and said that he did not escape, but that he was actually released from prison. He said that after leaving the kitchen area he returned to his cell in the West Wing. A few minutes later an officer came for him, took him to the "I. C. Department", and processed his release. He said that he signed for his money in the prison account, and upon his release, he went home. He said he remained at his home

for one and one-half months, and then traveled to New York and Los Angeles. Although he realized he had not completed his twenty year sentence, he assumed his release resulted from his constant correspondence to the judge who presided at his armed robbery trial.

The State was unable to explain how the appellant escaped. The evidence would make it appear that every conceivable exit between the dietary department and the West Wing was well guarded and that other avenues of escape were inaccessible. No evidence of any of the conventional means or implements of escape was found.

In the trial in the Criminal Court of Baltimore the jury found the appellant guilty of escape. The judge sentenced him to a term of seven years, to run consecutively to his prior twenty year sentence. From this conviction, Hutchinson appeals, arguing five separate errors. His issues on appeal are:

> 1. Was adequate foundation laid for the admission of hearsay under the business records exception?

> 2. Did the trial judge err in admitting testimony on the contents of documents not introduced into evidence?

> 3. Was the evidence sufficient to find the Appellant guilty beyond a reasonable doubt?

> 4. Was the trial judge's charge to the deadlocked jury coercive?

> 5. Did the trial judge abuse his discretion in refusing to grant Appellant's Motion to View?

We find no error in the rulings by the lower court, and therefore shall affirm the judgment.

1.

The appellant argues that the court improperly admitted his commitment papers in evidence under the business records exception to the hearsay rule. Specifically, Hutchinson contends that the State did not not lay a proper

foundation for the admittance of the record through Captain Rossman, the witness who identified them. The witness did not create or supervise the records of the appellant and was not charged with their custody. He testified that he was familiar with such records, because he used them on a day to day basis. Appellant says that is an insufficient foundation for admitting the records.

Although it seems that familiarity through frequent use would enable a witness to say whether a record is authentic, and is kept in the ordinary course of business, it is not necessary to resolve that question in this case. The only significance of the commitment papers was to show that the appellant was lawfully confined. The appellant himself conceded that when he testified that on 15 December 1973 he was housed at the Maryland Penitentiary as a result of a twenty year sentence he received for armed robbery.

### 2.

The appellant next contends that the lower court erred in admitting testimony that appellant's "base file",[1] not introduced into evidence, did not contain a release from the penitentiary. He asserts that although conclusions or opinions drawn from data contained in a file may be admissible under Maryland law, *see Smith v. Jones*, 236 Md. 305, 309, 203 A. 2d 865 (1964), "the records in which the conclusions are based must first be introduced into evidence". Here, the base file was not in evidence when Captain Rossman testified to the absence of a release.

Because the fact sought to be shown was negative, we think the lower court ruled correctly in permitting Captain Rossman to testify as he did. This view finds support in 4 J. Wigmore, Evidence, § 1244 (Chadbourn Rev. 1972), where the author expresses the opinion that:

"[T]he fact that an *entry* in a record or account book *does not exist*, while in a sense it involves the

---

1. The "base file" is a group of documents that contain generally copies of all administrative actions pertinent to an inmate's imprisonment.

document's terms, yet is usually and properly regarded as not requiring the book's production for proof. . ."

The basis for this view is lodged in the underlying rationale of the business records exception to the hearsay rule. Regularly maintained business records are admissible in evidence as an exception to the hearsay rule because the circumstances under which they are maintained by the company or agency assures accuracy not likely to be enhanced by "introducing into evidence the original documents upon which the records are based." *United States v. DeGeorgia*, 420 F. 2d 889, 893 (9th Cir. 1969).

In our view, the circumstances of the present case offer a like assurance that if a prison record, maintained for the purpose of noting each administrative action taken by the prison officials, contains no notation of a release, no such release occurred. That assurance is not likely to be enhanced by any other means of proving such a negative, such as introducing the base file into evidence. Appellant or his counsel had the right, of course, to examine the file.

The Court of Appeals has approved the admission of testimony showing a negative fact without the admission of the records themselves. In *Summons v. State*, 156 Md. 382, 144 A. 497 (1929), the Court reviewed the admissibility of testimony concerning corporate records and documents, where the papers had not been introduced into evidence. The Court stated, at 387:

"[A] competent witness, who has investigated and is familiar with the contents of the entire mass, may testify that certain entries in the corporate records or accounts do not exist."

Although the witness in *Summons* had knowledge of the creation of the records, the Court emphasized that the basis for its decision was the likelihood of the accuracy of the statement. When a witness draws conclusions or gives opinions based on information in the record, the situation is quite different, and the records must be admitted into

evidence. *Smith v. Jones, supra; Queen v. State,* 26 Md. App. 222, 337 A. 2d 199 (1975); *Hyman v. State,* 4 Md. App. 636, 244 A. 2d 616 (1968); *Goodman v. State,* 2 Md. App. 473, 235 A. 2d 560 (1967).

3.

Appellant's third asserted error is that the evidence was insufficient to support his conviction. In reference to sufficiency of the evidence, we recently stated, in *Isaacs v. State,* 31 Md. App. 604, 358 A. 2d 273 (1976), at 619:

> "To be insufficient in law to sustain the conviction, the record must demonstrate that there was no legally sufficient evidence or inferences rationally drawable therefrom upon which a jury could conclude that the accused, beyond a reasonable doubt, did, in fact, commit the crime alleged. *James v. State,* 14 Md. App. 689, 288 A. 2d 644 (1972); *King v. State,* 14 Md. App. 385, 287 A. 2d 52 (1972)."

*See also State v. Devers,* 260 Md. 360, 272 A. 2d 794 (1971), *cert. denied,* 404 U. S. 824, 92 S. Ct. 50, 30 L.Ed.2d 52 (1972); *Spease v. State,* 21 Md. App. 269, 319 A. 2d 560 (1974), *aff'd.* 275 Md. 88, 338 A. 2d 284 (1975).

In the present case, there was sufficient evidence from which the jury could reasonably have concluded that the appellant escaped from the Maryland Penitentiary. The only basic facts necessary to be shown were shown: that Hutchinson was lawfully confined in the penitentiary; that he was supposed to stay there; and that he left there. The State was not required to show *how* Hutchinson got out — only that he did get out. Intriguing as Hutchinson's explanation may have been, the jury was not required to believe it. It presented a question of credibility,[2] not of sufficiency.

---

2. Hutchinson's explanation probably failed the credibility test for several reasons. He said that an officer came to his cell, and from there, took him for processing and release. Yet Hutchinson's ring, watch, and hair pick were left in his cell. He said that he signed for his money in the prison account, but the record of that account showed a credit, not a withdrawal, on 15 December 1973.

### 4.

An hour and twenty minutes after the jury began deliberating, they reported back to the judge that they were deadlocked. The judge then gave the jury an Allen-type charge, as recommended by the American Bar Association, and as approved by the Court of Appeals in *Kelly v. State*, 270 Md. 139, 310 A. 2d 538 (1973), but coupled with prefatory and explanatory remarks. Appellant contends that the additional comments and the premature timing of the charge were such plain error as should be recognized under Maryland Rule 756 (g). As suggested in *Kelly v. State, supra*, we have carefully scrutinized the judge's remarks, and we do not believe that they constituted prejudicial error. *See also Burnette v. State*, 280 Md. 88, 371 A. 2d 663 (1977). There was no objection below that the additional instruction was prematurely given and we do not entertain that question here.

### 5.

Appellant's final issue is that the judge erred when he refused to grant a motion to view the prison. The granting or denial of such a motion is discretionary. The Court of Appeals in *Corens v. State*, 185 Md. 561, 45 A. 2d 340 (1946), said, at 573:

> "But we must follow the general rule, accepted both in this country and in England, that the granting or refusing of a request to allow the jury to view the premises where a crime is alleged to have been committed is within the discretion of the trial court. *Commonwealth v. Chance*, 174 Mass. 245, 54 N. E. 551, 75 Am. St. Rep. 306. In support of this rule, Professor Wigmore wrote that the inconvenience of adjourning court until a view can be had, or of postponing the trial for the purpose, may suffice to overcome the advantages of a view, particularly when the nature of the issue or the

object to be viewed renders the view of small consequence. 4 *Wigmore on Evidence*, 3d Ed., Sec. 1164."

We cannot say that the trial judge abused his discretion here.

*Judgment affirmed.*
*Appellant to pay costs.*