483 A.2d 1316

George STREET

v.

STATE of Maryland.

No. 220, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Nov. 19, 1984.

574

George E. Burns, Jr., Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on the brief, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Elizabeth Ritter, Asst. State's Atty. for Baltimore City on the brief, for appellee.

Argued before BISHOP, ADKINS and GETTY, JJ.

GETTY, Judge.

Appellant George Street, a former driver for the Royal Taxicab Association, Inc. (hereinafter "Royal Cab"), was tried and convicted of common law false imprisonment in a non-jury trial in the Circuit Court for Baltimore City (Resnick, J.). He was sentenced to a one-year prison term and a $500.00 fine, the prison term being suspended in favor of three years probation. Appellant urges, first, that the court erred in admitting into evidence letters and testimony to the effect that Royal Cab did not have a certain manifest in its files. Second, he argues that a fine may not be imposed as a penalty for the crime of false imprisonment.

At trial there was testimony from which the court could have found that the following events took place on August 8, 1983. The prosecutrix hired a Royal Cab driven by appellant at 8:25 A.M. Upon reaching her destination, the appellant's meter read $2.50. The prosecutrix had $2.46 in change, one ten-dollar bill and one twenty-dollar bill. When she found that she was four cents short in change, she apologized to the appellant and, explaining her predicament, offered him a ten-dollar bill. This the appellant angrily refused, citing the city ordinance that ensures cab drivers need not carry more than $5.00 in change.

The appellant also rejected the prosecutrix's suggestion that one or both of them obtain change for the ten-dollar bill at any one of several nearby establishments. When the prosecutrix attempted to get out of the cab she discovered

that both rear doors were locked. Her repeated entreaties to the appellant to let her out were to no avail—the appellant refused to disengage the locks, which he controlled. Separated from the front seat by a strong plexiglass shield, and unable to open the back doors or roll down the windows, the prosecutrix was effectively imprisoned.

The appellant was verbally abusive and physically threatening. He pounded continuously on the plexiglass shield that separated the front and back seats of his cab. He ordered the prosecutrix to read, out loud, a sign in the back that declared the driver was not required to carry more than $5.00 in change. At first she objected, but then, as the appellant grew more vehement, she complied. When the appellant began threatening to drive her to some unknown location, saying "I have some place to take you. I am going to take you some place," the prosecutrix, already frightened, became even more so. She begged the appellant to call the police and began to yell for help out of the partially opened rear window.

After being ignored by numerous pedestrians, the prosecutrix managed to stop one passer-by, Cora Williams. Williams, acting as an intermediary, persuaded the appellant to accept the prosecutrice's ten-dollar bill in payment of the fare, which, as the meter had been left running the whole time, now amounted to $5.20. The appellant then gave Williams a five-dollar bill, which she turned over to the prosecutrix.

The appellant was in the process of writing out a receipt for the still-imprisoned prosecutrix when a police officer arrived at the scene. Only then, after the prosecutrix had spent twenty-five minutes of captivity in the parked cab, did the appellant disengage the door locks and permit her to get out. The officer described the prosecutrix's condition by saying, "[s]he was distraught and hysterical.... She was so shook, she had trouble saying anything." The appellant claims to have been the one who summoned the police.

## I

■ On direct examination the appellant testified to his strict adherence to the rules and regulations issued by the Public Service Commission (PSC). On cross-examination, the appellant testified that he filed a manifest with Royal Cab for August 8, 1983, so as to comply with the law requiring every licensed cab driver to keep a written record of his trips on a manifest, which is filed daily with the operating company or association for which he works. Md. Ann.Code Art. 78, § 50G(2) (1980 Repl.Vol.). To attack the appellant's credibility the State offered into evidence three letters from Royal Cab in support of the proposition that, contrary to the appellant's testimony, he had not filed the manifest.

The PSC regulates the operation of taxicabs in Baltimore City. Md.Ann.Code Art. 78, §§ 50A–K (1980 Repl.Vol.). In the instant case, the State had summoned James Hendrickson, the PSC transportation supervisor, and requested all records pertaining to the August 8 incident between appellant and the prosecutrix. Hendrickson told the State that there was no need to serve him with a subpoena *duces tecum,* as he would promise to bring these records to trial. Thus, although never served with this subpoena, Hendrickson asked Royal Cab on three separate occasions to turn over the manifest which the appellant claims to have filed. The company responded to each request in writing as follows:

10/5/83: In response to your request for the manifest for cab # 1024 on August 8, 1983, please be advised that no manifest was turned in for that cab on that date.

11/1/83: In response to your request, please be advised that Royal Cab does not have a manifest on file for cab # 1024 for the date August 8, 1983.

1/31/84: After a careful search of the records, I find there are no manifests for George Street for 8/8/83.

The appellant argues that, in admitting these letters into evidence over his objection, the court committed reversible error.

The pertinent records for purposes of the business records exception to the rule against hearsay, the appellant reasons, are the actual manifest records kept by the cab company, not the letters from the cab company to the PSC which only described the records in response to the PSC inquiries. The appellant recognizes, of course, that an exception to the general requirement that the records themselves be introduced into evidence exists when a party is merely seeking to establish a "negative fact"—that is, when he is attempting to prove what is *not* in the records. It is well established that

> a competent witness, who has investigated and is familiar with the contents of the entire mass [of records] may testify that certain entries in the corporate records do not exist.

*Summons v. State*, 156 Md. 382, 387, 144 A. 497 (1929). The probative value of such testimony has been likened to that of "testimony on the stand by a person who denies that a sound took place because he heard no such sound." 5 *Wigmore on Evidence*, § 1531 (3rd ed. 1940).

In the instant case, however, the State produced no witnesses who claimed to be familiar with Royal Cab's records. It introduced letters written by someone claiming to have such a familiarity, but the authors were not made available for cross-examination as to the sufficiency of their record search and the reliability of their record keeping.

The issue is similar to that addressed in *Smith v. Jones*, 236 Md. 305, 203 A.2d 865 (1964). There, the plaintiff in a personal injury action sought, under the business records exception, to introduce a letter from a government officer (Mr. Parlan) which contained certain conclusions regarding the files in his department. In finding the letter inadmissible, the Court of Appeals held that:

> "... had Mr. Parlan been called to the stand ... he could have testified as to his conclusion .... Such testimony, of course, would have been subject to cross-examination.... In this case, Mr. Parlan's letter was not a part

of the official records, but was only given in response to an inquiry as to what the records showed." *Id.* [236 Md.] at 310, 203 A.2d 865.

The State relies upon *Hutchinson v. State,* 36 Md.App. 58, 373 A.2d 50, *cert. denied,* 281 Md. 739 (1977), as precedent for the admission of evidence of a negative fact. We do not question that authority. We note, however, that in *Hutchinson* the evidence in question was offered by a live witness who was familiar with the records through frequent usage. Hence, the defendant there was afforded an opportunity to cross-examine on the issues of the sufficiency of the record searches and the reliability of the filing system. In the instant case, the court erred in admitting the letters when no one familiar with Royal Cab's records was available for cross-examination.

## II

In the circumstances of this case, however, such error was harmless. If in a non-jury trial the appellant was not prejudiced by the erroneously admitted evidence, it forms no ground for reversal. *Williams v. Higgins,* 30 Md. 404, 407 (1869). It has further been held that, where the trial judge specifically certifies that such evidence did not influence his findings,

> "we cannot, with this part of the record before us, containing the solemn statement of an intelligent judge, assume that he was in any manner influenced by the testimony in question." *Id.*

Here, the record indicates that the trial judge, in reference to the evidence regarding the non-filing of a manifest, stated:

> *"Now, let's forget—and I am—my decision is not based on whether he kept a manifest that day,* but I am impressed with his concern for the rules and regulations and because this is one-on-one and I have had the opportunity to observe the demeanor of both the State's witness and the defendant, who chose to testify, I have

never seen a more evasive, a more controversial, a more disputive witness than the defendant." (emphasis added)

Later, the judge further explained the basis for his judgment. Addressing the defendant, he stated:

"I have observed a lot of cross-examination, and the trial took a long time. Your attorney never appeared cavalierly in this case, so that he could get out, he gave [the prosecutrix] a withering cross-examination. She hesitated only a moment to answer his questions. She never appeared evasive. She said I asked him I will go get the change, you will get the change, we will get the change, all were refused.

I believe her.

I don't believe you."

The record reveals that the trial judge's characterization of the appellant as "evasive" was, if anything, an understatement. The judge, having determined not to consider whether the appellant had filed a manifest or not, still had ample cause to disbelieve the appellant and to accept the prosecutrix's version of the incident beyond a reasonable doubt. The appellant does not dispute that the prosecutrix's testimony, if believed, makes out the elements of false imprisonment.

### III

■ Next, the appellant urges that his fine be set aside. He points out that, in Maryland, false imprisonment "is a common law offense, and, in the absence of a statute, is punishable as such." *Midgett v. State*, 216 Md. 26, 39, 139 A.2d 209 (1958). Appellant further persuades us that there is no way to determine confidently whether fines "in the modern sense" were a customary punishment at early common law. We also agree with appellant that false imprisonment is a lesser included offense of statutory kidnapping. "[Kidnapping] is an aggravated form of false imprisonment, embracing all of the elements of false imprisonment and adding to it an asportation...." *Tate v. State*, 32 Md.App.

613, 615, 363 A.2d 622 (1976). The Maryland kidnapping statute contains no provisions for a fine. Md.Ann.Code Art. 27 § 337 (1957) (1982 Repl.Vol.). On this basis, appellant argues that the lesser included offense of false imprisonment likewise may not be punishable by fine. We disagree.

Common law misdemeanors have been held to be punishable by "fine or imprisonment, or both, according to circumstances of aggravation in each case." *State v. Falkenham,* 73 Md. 463, 467–68, 21 A. 370 (1891). Appellant's contention that it "would present an extreme anomaly" to permit the trial court to fine him in lieu of imprisoning him presupposes that a $500 fine may be viewed as exceeding the upward boundary for penalties allowed by Maryland's kidnapping statute. Md.Ann.Code Art. 27 § 337 provides that a person convicted of kidnapping "shall be guilty of a felony and shall be sentenced to the penitentiary for not more than thirty years." A $500 fine cannot be viewed as more severe than a 30-year prison term. It is firmly established that

> "[i]n Maryland, a sentencing judge is vested with virtually boundless discretion. He may impose any sentence, which is not cruel and unusual punishment proscribed by Article 16 of the Maryland Declaration of Rights, and which is within the statutorily imposed limitations (if any there be) determined to be deserved for or necessitated by the proven criminal conduct in question."

*Logan v. State,* 289 Md. 460, 480, 425 A.2d 632 (1981).

Here, because the prosecutrix lacked four cents in change, the appellant willfully kept her locked up in the back seat of his cab for nearly half an hour, verbally abusing her and allowing the meter to run continuously. He refused to allow her to procure change for the ten-dollar bill she tendered and even refused to accompany her to any one of several establishments where they might have procured change. The court, after hearing all of this evidence in a fairly conducted trial, determined that under the circumstances of this case the appellant's conduct necessitated

**582**

the imposition of a suspended sentence and a $500 fine. Our review of the record reveals that the court did not abuse its discretion in imposing this sentence.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.