513 A.2d 870

George STREET

v.

STATE of Maryland.

No. 13, Sept. Term, 1985.

Court of Appeals of Maryland.

Aug. 25, 1986.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH *, EL-DRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

The question presented in this case is whether a fine may be imposed as part of a sentence upon conviction of the common-law crime of false imprisonment.

We set forth the salient facts as follows. At 8:30 a.m. on August 8, 1983, Valerie McNeal, the prosecutrix, got into a cab driven by appellant, George Street. When the cab reached McNeal's destination, the meter read $2.50. McNeal had $2.46 in change, plus one ten-dollar bill and one twenty-dollar bill. When she discovered that she was four cents short in change, McNeal offered appellant the ten-dollar bill. Appellant refused the bill, citing a city ordinance which provides that cab drivers need not carry more than $5.00 in change. Appellant also rejected McNeal's suggestion that one or both of them obtain change for the ten-dollar bill at a nearby establishment. When McNeal attempted to get out of the cab, she found that the rear doors were locked. Despite McNeal's repeated requests, appellant refused to disengage the locks, which he controlled. The parties argued for approximately twenty-five minutes, with the meter running all the while. After being ignored by numerous pedestrians, McNeal finally managed to obtain the assistance of a passerby, Cora Williams. Williams, acting as mediator, persuaded appellant to accept the ten-dollar bill in payment of the fare, which now amounted to $5.20. Appellant gave Williams a five-dollar bill, which she promptly turned over to McNeal. Shortly thereafter, a police officer arrived on the scene and appellant finally released McNeal from the cab.

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Appellant was charged with false imprisonment. He was tried and convicted in the Circuit Court for Baltimore City. The trial judge sentenced appellant to one-year imprisonment and a $500 fine with the prison term suspended in favor of three years probation. In *Street v. State*, 60 Md.App. 573, 483 A.2d 1316 (1984), the Court of Special Appeals affirmed the circuit court's judgment. In response to appellant's petition, we issued a writ of certiorari to address the important question presented.

## I

At the outset, we note a few points concerning the history and development of fines as criminal sanctions at common law. The use of fines in criminal cases predates the Magna Carta, which prohibited the imposition of excessive fines and assessments. *See* 4 W. Blackstone, *Commentaries* *372. Compared with other forms of punishment used at common law, the imposition of a fine was a mild penalty indeed. Criminal sentences embodied a litany of abhorrent practices, including cutting off the hand or ears, slitting the nostrils, branding the hand or face, whipping, the pillory, and the ducking-stool. Moreover, Blackstone writes that "[d]isgusting as this catalogue (of punishments) may seem, it will afford pleasure to an English reader, and do honour to the English law, to compare it with that shocking apparatus of death and torment, to be met with in the criminal codes of almost every other nation in Europe." *Id.* at 370–71. Thus, the development and use of pecuniary penalties, in the form of fines, contrasted sharply with the various methods of corporal punishment that had been employed as criminal sanctions at common law.

The earliest fines were agreements between the judge and the prisoner to avoid imprisonment, at a time when the judge had no power to impose pecuniary punishments. *See* J.W.C. Turner, *Kenny's Outlines of Criminal Law* 199 (17th ed. 1958). These fines constituted a major source of the royal power and revenue. An eminent authority on the common law writes:

It appears that the old kings of England put themselves entirely on the footing of the barbarous eastern princes, whom no man must approach without a present, who sell all their good offices, and intrude themselves into every business, that they may have a pretence of extorting money. Even justice was avowedly bought and sold; the king's court itself, though the supreme judicature of the kingdom, was open to none who brought not large presents to the king, the bribes given for the expedition, delay, suspension and, doubtless, for the perversion of justice, were entered into the public registers of the royal revenue, and remain as monuments of the perpetual iniquity and tyranny of the times.

M. Hale, *The History of the Common Law of England* 184 n.F (1820).

At common law, a fine, either with or without imprisonment, was punishment for a misdemeanor. *See* IX *Halsbury's Laws of England* 230 (2d ed. 1933); J.W.C. Turner, *supra*, at 575; P. Fitzgerald, *Criminal Law and Punishment* 251 (1962); 1 *Russell on Crime* 768 (J.W.C. Turner 11th ed. 1958). As to felonies, conviction entailed the automatic forfeiture of the felon's property. Thus, the power to impose a fine for a felony was not necessary. P. Fitzgerald, *supra*, at 251. In exercising its discretion as to the amount of the fine, the court considered the egregiousness of the particular offense and the financial condition of the offender, as well as other factors. *See* IV W. Blackstone, *supra*, at 371; J.W.C. Turner, *supra*, at 575.

## II

In this case, appellant was charged with false imprisonment. This Court has defined false imprisonment as the "unlawful detention of a person against his will." *Midgett v. State*, 216 Md. 26, 38–39, 139 A.2d 209, 216 (1958) (citing Clark & Marshall, *Treatise on the Law of Crime* § 220 (5th ed. 1952); L. Hochheimer, *Law of Crimes and Criminal Procedure* § 316 (2d ed. 1904) ). It is a common-law offense in Maryland, the penalty for which is not statutorily

prescribed. *Midgett, supra,* 216 Md. at 39, 139 A.2d at 216. At common law, false imprisonment was classified as a misdemeanor. *See* 4 W. Blackstone, *supra,* at 216; R. Perkins, *Criminal Law* 175 (3d ed. 1969); LaFave & Scott, *Criminal Law* 58–59 (1972); 2 *Wharton's Criminal Law* § 209 (C. Torscia 14th ed. 1979); IX *Halsbury's Laws of England, supra,* at 470–71. As set forth above, misdemeanors at common law were punishable by fine, imprisonment, or both.

We have noted on several occasions that the only restrictions on sentencing for a common-law crime are (absent a penalty prescribed by statute) that the sentence be within the reasonable discretion of the trial judge and that it not be cruel and unusual punishment. In *Burley v. State,* 226 Md. 94, 172 A.2d 394 (1961), the appellant asserted that a sentence of five years for common-law assault was excessive and thus violated the prohibition against cruel and unusual punishment set forth in Article 25 of the Maryland Declaration of Rights. We held that under the circumstances of that case, including appellant's conviction on prior occasions of crimes against the person, the sentence imposed did not constitute cruel and unusual punishment. In *Heath v. State,* 198 Md. 455, 85 A.2d 43 (1951), this Court rejected a similar contention as to appellant's five-year sentence for common-law assault. The Court declared:

> Still, from early times, when misdemeanors were punished by whatever fine or imprisonment the judge might deem it right to impose, it has been the judicial habit to look upon assaults as more or less aggravated by such attendant facts as appealed to the discretion for a heavy penalty.... An assault is deemed to be more or less enormous according to the facts of the particular case.

*Id.* at 467, 84 A.2d at 851 (quoting 2 Bishop, *Criminal Law* 32 (9th ed.). In light of the "attendant facts" involved, the Court concluded that the sentence imposed was within the discretion of the trial court and did not violate the constitutional provision against cruel and unusual punishment. In *Messina v. State,* 212 Md. 602, 130 A.2d 578 (1957), the

appellant contended that a four-month sentence for the common-law offense of indecent exposure constituted cruel and unusual punishment. The court held that in light of the "corrupting effect" of appellant's act, the sentence "could scarcely be held to have been beyond a reasonable discretion, and certainly could not under the limitations of the decisions of this Court be declared either cruel or unusual." *Id.* at 607, 130 A.2d at 581. *See also Apple v. State*, 190 Md. 661, 668, 59 A.2d 509, 511 (1947).

In a separate line of Maryland cases, this Court has refused to limit sentences for common-law offenses where the legislature has not expressly so provided. In *Gleaton v. State*, 235 Md. 271, 201 A.2d 353 (1963), the appellant was charged with assault with intent to murder in the first count, simple assault in the second count, and assault and beating with intent to maim in the third count. The appellant pleaded guilty to the second count, and the prosecuting attorney nol prossed the first and third counts. The appellant received a sentence of ten years on the second count.

On appeal, he argued that the ten-year sentence for common-law assault was excessive and unreasonable when compared to the maximum sentences for the two charges that were nol prossed. The greater statutory offense of assault with intent to murder carried a maximum fifteen year sentence, while the statutory offense of assault and beating with intent to maim carried a maximum ten-year sentence. Initially, the Court noted that no limitation on the penalty for common-law assault existed at common law. The Court refused to interpret the penal limits applicable to the statutory assaults as imposing any restriction on the maximum sentence for the lesser common law offense. The Court concluded that the matter of imposing sentences for common law offenses is left to the sound discretion of the trial court, subject only to the constitutional prohibition against cruel and unusual punishment.[1] Relying upon

---

1. *Cf. Simms v. State*, 288 Md. 712, 421 A.2d 957 (1980). In Simms, the State charged the defendant with assault with intent to rob and simple

*Gleaton,* the Court reaffirmed this principle in *Roberts v. Warden,* 242 Md. 459, 219 A.2d 254 (1966).  In *Roberts,* the Court rejected appellant's claim that the twenty-year sentences imposed by the trial judge for two counts of simple assault were illegal because they exceeded the statutory maximum of fifteen years for the statutory crime of assault with intent to murder.  The court concluded that the sentences imposed by the trial judge did not constitute cruel and unusual punishment.  All of these cases demonstrate the reluctance of this Court to place strict limitations on the trial judge's discretion in sentencing an individual convicted of a common-law crime.

### III

■ We now turn to the questions raised by appellant in the case sub judice.  Appellant contends that there is no basis for concluding that what today is termed a fine was ever the recognized common law punishment for false imprisonment.  In support of his contention, he points to the existence of two types of pecuniary punishments at common law, fines and amercements.  An amercement is defined as a money penalty in the nature of a fine that, at common law, "was assessed by the peers of the delinquent, or the affeerors, or imposed arbitrarily at the discretion of the court or the lord." *Black's Law Dictionary* 75 (5th ed. 1979).  The only difference between these two forms of pecuniary punishment at common law was that a fine was fixed by the court, while an amercement was fixed by the jurors. *See* J.W.C. Turner, *supra,* 579 n. 1.  Despite this distinction, fines and amercements at common law shared the same purpose and function:  both forms of pecuniary penalties were used as punishment for common-law misde-

---

assault.  Each charge was based upon the same acts, and the defendant was placed in jeopardy on both charges.  Under that set of circumstances, we held that the State, by prosecuting the defendant on both charges, had in effect elected to prosecute for the ten-year maximum sentence prescribed for the greater statutory offense of assault with intent to rob.

meanors. *See* M. Hale, *supra,* at 183. Indeed, the use of fines as criminal sanctions has changed little from the early days of its development at common law. Thus, we find no merit in appellant's contention that the difference between fines at common law and modern-day fines precludes the use of a fine in the instant case.

Appellant also contends that because the greater crime of kidnapping is not punishable by fine, a fine cannot be imposed for the lesser-included offense of false imprisonment. As we pointed out above, this Court has repeatedly rejected arguments that the penalty for common-law crimes is limited by the legislatively-imposed penalties for greater statutory offenses. *See Roberts v. Warden, supra; Gleaton v. State, supra; Messina v. State, supra.* If the statutory offense is inapplicable in determining the length of imprisonment, then we see no reason why the statute should apply to determine whether a fine may be imposed. In addition, we think that appellant's reliance upon *McCoy v. State,* 157 Md. 372, 146 A. 242 (1929) in support of its argument is misplaced. *McCoy* involved a conviction under a statute prohibiting the manufacture for sale of certain quantities of alcoholic beverages. The statute also set forth the penalties for violation of its provisions. There was no question that the statute controlled both the crime itself and the applicable penalty. Unlike *McCoy,* the instant case does not involve a crime defined and punished by statute. *McCoy* is inapposite. Therefore, we conclude that the penalties provided for the statutory offense of kidnapping do not impact upon the determination of punishment for the lesser-included common-law offense of false imprisonment.

██ Here, the trial judge examined the conduct of appellant giving rise to his conviction. He also considered appellant's financial condition with regard to his ability to pay the fine. Under these circumstances, the imposition of a $500 fine constituted a reasonable exercise of the judge's discretion. No extended discussion is necessary in these

circumstances to conclude that a fine of $500 does not constitute cruel and unusual punishment.

Accordingly, we shall affirm the judgment of the Court of Special Appeals.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.