THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES DEAN, Defendant-Appellant.
First District (6th Division)   No. 1—88—0047

Opinion filed December 8, 1989.

Randolph N. Stone, Public Defender, of Chicago (Thomas N. Swital, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlavan Czech, and Inez Toledo-Bargioni, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:
After a bench trial, the defendant, Charles Dean, was convicted of the criminal sexual assault of his daughter and sentenced to four

years' probation with the first five months to be served with the Cook County Department of Corrections. The five months were considered served.

The defendant first contends that he was not proved guilty beyond a reasonable doubt because his 12-year-old daughter, A.D., recanted the stories that she had previously told her mother, the police and the State's Attorney and testified that her father had done nothing wrong.

A.D. testified that she was living with her parents, Denise and Charles Dean, at 1846 West Birchwood in Chicago on or about July 29, 1987. On cross-examination she testified that her father did not perform any sexual acts upon her. She admitted that, on August 10, 1987, she told her mother and the police that her father had performed sexual acts upon her. She told her mother about the sexual acts because she was mad that her father would not let her go to a party. Around August 9 or 10 she told her mother that she had missed her period or that it was late. When her mother asked her if she had been "fooling around," she told her mother that she had been "fooling around" with her father. She knew that she had talked to various police officers and an assistant State's Attorney, but she did not remember what she had told them.

Detective Katherine Fitzgibbons testified that she interviewed A.D. at the 24th District police station sometime during the day on August 10, 1987. A.D. told her that she was worried that her father had made her pregnant. Her father had had sex with her on at least two occasions. On one occasion, he picked her up, carried her to his bedroom, took off her clothes and licked her vagina. On another occasion he placed his penis inside her vagina. Both incidents occurred in June or July, 1987. One incident occurred around her father's birthday, either July 29 or 30.

Officer Dan Kenn testified that on August 10, 1987, he went to the defendant's home about 7:40 a.m. When he arrived he saw Denise Dean and A.D. Mrs. Dean told Kenn that A.D. came to her that morning and told her that she had missed her period and was afraid that she might be pregnant. A.D. told her that she had been "fooling around" with "daddy." Sergeant Glenn White arrived shortly after that conversation, and Mrs. Dean advised the officers that she had called her husband at work and instructed him to come home. Sergeant White told Mrs. Dean to confront her husband when he came home and that he and Officer Kenn would listen to the conversation.

The defendant arrived home about 20 minutes after Kenn's arrival. He and his wife talked in the kitchen, and Kenn and White lis-

tened in the living room about 5 to 10 feet away. The two rooms were separated by an open doorway. Mrs. Dean became very hysterical and began screaming and yelling at the defendant. She demanded to know whether he had had sex with their daughter. At first the defendant denied knowing anything; then he admitted to having sex with A.D. After hearing that statement, Kenn and White entered the kitchen and placed the defendant under arrest.

After receiving *Miranda* warnings, the defendant said that he had had sex with A.D. a couple of times at their home, that he was sorry and that he did not intend everything to turn out as it did. He also said that he needed help and wanted to start getting help. At that time both Mrs. Dean and A.D. were crying.

Assistant State's Attorney Ellen Mandeltort spoke to A.D. at the 24th District police station about 11:30 a.m. A.D. told her that her father had sexually abused her for some period of time. Mandeltort then spoke with the defendant in an interview room and advised him of his *Miranda* rights. He acknowledged that he understood his rights and agreed to talk. He asked if he could speak to her alone in the lock-up. He was crying at the time and said that he did not want to ruin his family. He told her that he could remember three times when sexual things happened with his daughter; on one occasion he actually inserted his penis into his daughter's vagina; on two other occasions he had licked his daughter's vagina. More specifically, he said that "his daughter had asked him to kiss her stomach, and somehow his head wound up by her vagina, and he was just licking it." On July 30, 1987, his birthday, he had called A.D. into his bedroom, and he licked her vagina then. He said that he had told A.D. that what he was doing was wrong but that he could not help himself.

A.D. testified on behalf of the defense and denied that her father had sex with her. She told the police officers that her father had sex with her because she was mad because he would not let her to go a party and "because that's the way they talk in the project." She did not tell the police that she made up the story because she "didn't know it was going to go this far."

She admitted that she knew that the police had taken her father to jail based upon what she had said. She confirmed that at a preliminary hearing a few days later she again told the State's Attorney that her father had sex with her. She never went to the police to admit her lie.

Denise Dean testified that on August 10, 1987, A.D. told her that she and her father had had sexual contact. She believed A.D. She called her husband upon hearing A.D.'s story but denied that she had

asked him to come home. She could not remember if she had had any conversation with the police officers after calling her husband. She denied that the officers told her they would wait outside while she spoke with the defendant.

After the defendant came home, they had a loud argument for about a "half a minute." The police officers were in the living room. She remembered the defendant saying that he did not have sex with A.D. and that she should calm down; but she did not remember him ever saying that he had sex with A.D.

Three days later A.D. told her that she had made up the story because the defendant would not let her go to a party. A.D. came up with that story "maybe to get him out of the house or something. Or, revenge or something." She told the defendant's lawyer, and A.D. gave a written statement to that lawyer admitting her lie.

She never went to the 24th District station to advise officers Kenn and Fitzgibbons that A.D. had recanted her story; nor did she speak with either Kenn or Fitzgibbons by telephone. Twenty-one days after her husband had been incarcerated and 18 days after A.D. recanted her story, she took A.D. to her husband's lawyer where A.D. signed a written statement. She knew that her husband was incarcerated all this time.

■ When a defendant's conviction of a sex offense rests upon a child's testimony of tender years, in order to sustain a judgment of guilt, the evidence must be corroborated or otherwise clear and convincing. *People v. Williams* (1953), 414 Ill. 414, 111 N.E.2d 343.

■ The defendant argues that the State failed to prove him guilty beyond a reasonable doubt because the evidence was neither corroborated nor clear and convincing. He makes five contentions: First, A.D. recanted her initial accusations. Second, upon learning that A.D. made up the story, Mrs. Dean took action to advise authorities of the truth. Third, A.D. did not make the initial accusations promptly; and, therefore, the case was void of prompt complaint or outcry. Fourth, no medical evidence corroborated the alleged sexual assaults. Last, the alleged inculpatory statements were insufficient.

We conclude that what action Mrs. Dean took later is not material and that the absence of an immediate complaint or medical evidence does not create a reasonable doubt, as a matter of law; nor does A.D.'s recantation of her initial accusation. Last, we conclude that the inculpatory statements were sufficient.

The first issue, which in our judgment is determinative, is the weight to be given the statements admittedly given by A.D. to her mother, the police and the State's Attorney.

Section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1) provides, in part, as follows:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—
* * *
(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
* * * .
(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought or at a trial, hearing, or other proceeding * * *."

A case much in point is *People v. Winfield* (1987), 160 Ill. App. 3d 983, 513 N.E.2d 1032, in which a seven-year-old witness testified at the trial of her father that he had not sexually abused her and that her testimony at a preliminary hearing was a lie. The State's evidence consisted of the witness' testimony at the preliminary hearing and a nurse's testimony as to what the witness had told her 24 hours after the alleged occurrence. This court, in reliance on section 115—10.1, affirmed the conviction despite the fact that there was no physical evidence corroborating the witness' account. In our judgment, the facts of this case are stronger than those in *Winfield* since the defendant here confessed.

The record shows that the judge rejected the defendant's argument that A.D.'s statements were not admissible as substantive evidence. That ruling was correct. The judge said that the case was one of "credibility." He found the defendant's witnesses "unconvincing." He also observed that he believed that the true facts came out "in the heat of what went on" and not later after the parties had a change of heart. It was his function to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) It is not for us to substitute our judgment for that of the trial judge on questions involving the weight of the evidence and the credibility of the witnesses. (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 432 N.E.2d 1323.) We will not, therefore, substitute our judg-

ment for that of the trial judge in determining the weight to be given to the statements made by A.D. to her mother, the police and the State's Attorney. We would make the same observations with respect to the confessions made by the defendant. We conclude, therefore, that when considering all of the evidence in the light most favorable to the prosecution we cannot say that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ The defendant next contends that the State failed to prove the *corpus delicti* of the offense with evidence other than the defendant's alleged statements. The applicable rule provides that some independent or corroborating evidence other than the confession must tend to show that a crime occurred. (*People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.) Again, we refer to the observations we made on the question of the weight to be given to the statements of A.D. but add that the necessary independent or corroborating evidence need not be established beyond a reasonable doubt but need only *tend* to prove that an offense was committed. (*Willingham*, 89 Ill. 2d at 361.) When corroborating evidence tends to confirm the circumstances related in a confession, a court may consider both in determining whether the State has proved the *corpus delicti*. (*Willingham*, 89 Ill. 2d at 360.) We agree with the State that it clearly established consistent evidence corroborating the defendant's confession. A.D. related to Detective Fitzgibbons specific acts of sexual abuse committed by her father. She also related the time during which these acts occurred. In an interview with Assistant State's Attorney Mandeltort, the defendant confirmed the very same acts. He also confirmed his daughter's story that one of the acts took place on or near his birthday. In our judgment the evidence sufficiently established the *corpus delicti*.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and LaPORTA,* JJ., concur.

---

*Justice LaPorta participated in this opinion after the resignation of Justice Quinlan, who had participated in the oral argument. Justice LaPorta has read the briefs and listened to a tape of the oral argument.