THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM DENNING, Defendant-Appellant.

First District (4th Division) No. 1—89—3252

Opinion filed September 5, 1991.—Rehearing denied October 10, 1991.

---

*Judge Coccia fully participated in the decision of this case prior to his resignation from the court.

Frank Celani, of Lansing, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Sharon L. Heath, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a bench trial, the defendant, William Denning, was found guilty of criminal sexual abuse of his four-year-old granddaughter. He was sentenced to 10 weekends in the Cook County jail and one year of conditional discharge. On appeal Denning argues that he was not proved guilty beyond a reasonable doubt, that the trial court improperly admitted certain evidence, and that section 115—10 of the Code of Criminal Procedure of 1963 is unconstitutional. Ill. Rev. Stat. 1987, ch. 38, par. 115—10.

Before the commencement of the trial, the defendant filed a motion to suppress certain statements he made to the police. The trial court denied the motion. Also prior to trial, the State, pursuant to section 115—10 of the Code of Criminal Procedure, filed notice with the court of certain hearsay statements of the child it intended to introduce at trial. (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.) Under section 115—10, the State, in connection with the prosecution of a defendant for a sexual act committed upon a child under 13, may under certain circumstances introduce out-of-court statements made by the child. (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.) After determining that the victim was unavailable to testify, the trial court ruled that some of the hearsay statements would be admissible, while others would not be allowed.

At trial, the parties testified that on Thanksgiving Day, November 26, 1987, the victim, her mother, Annette and the victim's three sisters went to their grandparents' home for dinner. When the others departed later in the day, the victim was left with her grandparents for a visit. She did not return to her own home until November 30,

1987. On November 27, the victim was in her grandparents' home with only her invalid great-grandmother and her grandfather, the defendant.

Annette testified that on November 30, when the victim returned from visiting her grandparents, Annette was caring for her triplets and the victim went outside to play. Later in the evening, using the term "cootie," her family's vernacular for vagina, the victim told her mother that her vagina hurt. This initial statement was unprompted. Annette asked the victim why her vagina hurt and the victim replied that her grandfather had "played with it." Annette took the child into the bathroom and observed that her vagina was very red, "to the point *** of being raw." In response to her mother's question about how the defendant had played with her vagina, the victim made a rubbing motion by her vagina and her rectal area. This testimony was admitted over the defendant's objection that it was outside the notice the State provided prior to trial. The victim also told her mother that the defendant had stuck her with a needle in the thigh and in the vagina. Annette observed two small red dots on the victim's thigh.

Annette arranged for her cousin to take her and the victim to the hospital that evening. On the way to the hospital, Annette told the victim that she was going to the hospital because her grandfather had played with her vagina. The victim again made a rubbing motion over her vagina and rectal area. She also stated that the defendant had held her down and punched her in the vagina. The defendant objected to this testimony again on the basis that the testimony was outside the scope of the notice the State had given prior to trial. The trial court allowed the testimony and also overruled the defendant's objection to Annette's further testimony that the child told her that the defendant stated he was going to break the victim's bones and punch her in the face.

Annette testified that at the emergency room, in response to questioning by a nurse, the victim stated that her grandfather had played with her vagina about five times, that he had punched her in the vagina and that "it felt like he was pulling her stomach out," and that he had poked her with a needle in the leg and the vagina. The victim also made a movement with her hand over her vagina and rectal area in demonstration for the nurse. The victim gave essentially similar statements to the emergency room doctor. Annette testified, as did her sister, that after the Thanksgiving visit, the victim, in contrast to her prior behavior, no longer wanted to be around the defendant and became extremely agitated at the mention of his name.

The child's grandmother, the defendant's wife, also testified at trial. She stated that on the day following the victim's visit to the hospital, she told the child that she had heard that the victim had been at the hospital and asked the child what had happened. The victim pulled down her pants and made a rubbing motion over her vagina and rectal area and told her grandmother that the defendant "did this." The grandmother noticed that the victim's vaginal area was red.

Assistant State's Attorney Scott Cassidy testified that when he interviewed the defendant at the police station, the defendant initially denied any improper conduct toward the victim. Later the defendant stated that he had touched the victim "in her vagina while he was giving her a bath." He said that touching the victim's vagina sexually aroused him and that he recognized that he had a problem for which he was going to seek professional help. On cross-examination, Cassidy acknowledged that he had kept no notes of the interview and that the defendant had not given a written statement. Cassidy also acknowledged that during the hearing on the defendant's motion to suppress the statements to police, Cassidy had not testified that the defendant had said that touching the victim sexually aroused him.

After the State rested its case, the defendant moved to exclude the defendant's statements to the police on the basis that the State had failed to call as a material witness Detective James Seroczynski, who was present when the defendant made the statements and who testified at the motion to suppress. The trial court denied the defendant's motion. The defendant rested without presenting evidence and was subsequently found guilty of criminal sexual abuse.

The defendant's first argument on appeal is that the trial court erred in allowing into evidence certain statements the victim made to Annette in the bathroom and in the car on the way to the hospital. At trial the defendant argued that the statements objected to had not been revealed to the defendant in the section 115—10 notice provided by the State. The defendant specifically objected to Annette's testimony that in the bathroom the victim demonstrated with a rubbing motion over her vagina and rectal area what the defendant did to her. The defendant also objected to Annette's testimony that in the car on the way to the hospital the child told her that the defendant had held her down and punched her in the vagina and had stated he was going to break her bones and punch her in the face. The trial court allowed the statements into evidence, finding they were admissible under the spontaneous-utterance exception to the hearsay rule. See M. Graham,

Cleary & Graham's Handbook of Illinois Evidence §803.3 (5th ed. 1990).

■ We believe the statements in question were revealed in substance to the defendant before trial, and it was therefore not error for the trial court to admit them. Under section 115—10, the State was required to give the defendant "reasonable notice of [its] intention to offer the statement and the particulars of the statement." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(d).) As with other rules related to discovery, we believe that section 115—10(d) was designed to protect the defendant against surprise, unfairness, and inadequate preparation. (See *People v. Bollman* (1987), 163 Ill. App. 3d 621, 516 N.E.2d 870.) Where there has been no such prejudice, the admission of evidence is not reversible error even where the State has arguably committed a discovery violation.

In the present case, we believe the defendant was reasonably informed of the statements in issue. The record reveals that in a statement of notice pursuant to section 115—10, the State related to the defendant that it intended through the victim's mother to introduce, among others, the following statements of the victim.

At 9:30 p.m. on the evening of November 30, 1987, the victim, pointing to her vagina stated to her mother: "[T]his is what Grandpa Willie did to me, he stuck me with a needle, and stuck me in the cootie too." The victim also related that the defendant had punched her in the vagina and that it had felt like he was trying to pull her stomach out from the inside.

Later in the same evening, on the way to the hospital in the car, the victim stated: "Grandpa Willie held me down real hard, I wanted to get away." The victim also stated that the defendant had told her he would break her bones and kill her. She also made a demonstration by rubbing over her vagina and rectal area.

While the wording and timing of the trial testimony vary slightly from the statement of notice, we do not believe that these slight deviations are significant. Nor has the defendant explained how the differences prejudiced him. Further, the testimony given at the pretrial proceeding concerning the admission of the section 115—10 statements was essentially that given at trial. For these reasons we believe the defendant was reasonably informed of the statements the State intended to introduce at trial, and it was not error for the trial court to admit the statements.

The defendant's next argument is that section 115—10 violates the confrontation clause of the Federal Constitution in that it fails to direct the court to refrain from considering corroborative evidence in

determining the reliability and trustworthiness of the statements the State seeks to introduce. Citing to *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, the defendant argues that out-of-court statements which do not fall within one of the firmly rooted hearsay exceptions must be accompanied by sufficient indicia of reliability without reference to corroborative evidence.

■ Under section 115—10, the out-of-court statements of a child under 13 relating to a sexual act committed upon that child "shall only be admitted if: (1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and (2) [t]he child either: (A) [t]estifies at the proceeding; or (B) [i]s unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1987, ch. 38, par. 115—10(b).

■ This court must construe section 115—10 as not offending the Constitution if such a construction is reasonable. (*People v. Geever* (1988), 122 Ill. 2d 313, 522 N.E.2d 1200, *appeal dismissed* (1988), 488 U.S. 920, 102 L. Ed. 2d 319, 109 S. Ct. 299.) We believe that in view of the language of the statute, it is reasonable to construe section 115—10 as requiring that the threshold issue of the reliability of the testimony must be addressed before any corroborative evidence is considered. It is only after the court has determined that the statements are sufficiently trustworthy that it may go on to also find corroboration in the case of an unavailable witness. Under this construction, we believe that section 115—10 comports with the general rule of *Idaho v. Wright* and is not in violation of the Constitution.

The defendant further argues that in any case section 115—10 is unconstitutional as applied to him because it is unclear whether the trial court considered corroborative evidence concerning the condition of the victim's vagina in ruling upon the reliability of the child's out-of-court statements.

■ We believe that there is adequate basis in the record upon which the trial court could have determined that the circumstances surrounding the testimony in question were sufficient indication that the statements were reliable. In *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, the Supreme Court enumerated several factors that indicate reliability, including spontaneity, consistent repetition, the mental state of the declarant, and the terminology used by the child. In the present case, the victim made unprompted statements to her mother, she essentially repeated the statements and demonstrations on several occasions, she had in the past enjoyed a good relationship with the defendant and there was no

evidence to indicate another reason for a sudden rejection of him, she was in pain when she made the statements, she was four years old, and she used a young child's terminology in describing the events. For these reasons, we do not believe that the defendant's constitutional rights were violated by the court's admission of the evidence in question.

■ The defendant's next argument is that the trial court erred in admitting the defendant's statement to the police because at trial the State failed to produce the corroborating testimony of a material witness to the confession, Detective Seroczynski. At the hearing on the motion to suppress the defendant's statement, Detective Seroczynski testified in detail to the circumstances and content of the defendant's statement and was cross-examined by the defendant. We do not believe, as the defendant argues, that having provided Detective Seroczynski as a witness at the suppression hearing, the State was required to call him again at trial, nor has the defendant provided authority for so holding. In *In re J.C.* (1979), 69 Ill. App. 3d 289, 387 N.E.2d 401, the case upon which the defendant relies for support, the material witness in question had not been produced at the suppression hearing or at trial. The court in *In re J.C.* found that the defendant, having failed to object at the suppression hearing, had not waived his objection to the absence of the witness at trial. The court stated that the purpose of the material witness rule is to "safeguard against the use of improperly induced confessions by making all witnesses to the confession available for cross-examination." (*In re J.C.*, 69 Ill. App. 3d at 293, 387 N.E.2d at 404.) In the present case, the defendant had ample opportunity to cross-examine Seroczynski at the suppression hearing. He has not asserted how he was prejudiced by the inopportunity to again question the detective at trial. As such we do not believe this argument provides a basis for excluding the defendant's statements.

■ The defendant further argues that his alleged statements should not have been admitted into evidence because they were uncorroborated by any other evidence at trial. Specifically, the defendant asserts that in contrast to the defendant's alleged statements, nothing the child said indicated that anything happened to her in the bathroom while the defendant was giving her a bath.

We do not believe that the defendant's statements stand uncorroborated. The general rule is that there must be some independent or corroborating evidence other than the confession which tends to confirm the circumstances related in the defendant's statement. (*People v. Dean* (1989), 192 Ill. App. 3d 144, 548 N.E.2d 606.) In the present case, the defendant allegedly stated that he touched the vic-

tim in her vaginal area while giving her a bath; that he rubbed the victim's vagina. Although in the victim's statements introduced at trial there was no mention of the location by room in which the offense occurred, the victim's statements indicated that she was rubbed in the vaginal area, and the observation of other witnesses corroborated that the victim's vaginal area had been abused. We believe this evidence tends to confirm the statements of the defendant. Any discrepancy that the mention of a bath creates is not so great as to affect the admission of the evidence, but rather goes to the weight to be given the statements by the trier of fact. See *People v. Dodds* (1989), 190 Ill. App. 3d 1083, 547 N.E.2d 523.

■ In his final argument, the defendant asserts that he was not proved guilty beyond a reasonable doubt. We believe that in the present case the evidence is not so improbable as to justify a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) The evidence indicates that the victim was in her grandparents' home for several days. During that time, on one occasion she was left with only her invalid, elderly great-grandmother, and the defendant. Thereafter the victim became afraid and agitated at the mention of defendant. The victim made repeated and consistent statements about the defendant poking and rubbing her vagina which the trial court determined were reliable. At the same time, the victim's mother and grandmother observed that the child's vagina was raw and red. The defendant stated that he touched and rubbed the victim's vagina. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267.

For these reasons, we affirm the ruling of the trial court.

Affirmed.

LINN and McMORROW, JJ., concur.