628 A.2d 676

**John V. CHAPMAN**

v.

**STATE of Maryland.**

**No. 133, Sept. Term, 1992.**

Court of Appeals of Maryland.

July 30, 1993.

Margaret Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen. of Maryland, on brief), Baltimore, for appellee.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT M. BELL and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired, specially assigned), JJ.

CHASANOW, Judge.

In 1978, as part of a large-scale revision of Maryland's theft and bad check laws, the General Assembly enacted S.B. 1153. Chapter 849 of the 1978 Acts of Maryland. One section of that comprehensive statutory scheme is now Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 142(c).[1] Section 142(c) provides a narrow exception to the hearsay rule, permitting the State to introduce an affidavit of a bank to establish dishonor of a check or the status of an account without requiring any of the bank's employees to testify. Article 27, § 142(c) provides:

> "§ 142. [Obtaining property or services by bad check]— Presumptions.
>
> \*     \*     \*     \*     \*     \*
>
> (c) Dishonor of a check by the drawee, that the drawer had no account with the drawee at the time of utterance, and insufficiency of the drawer's funds at the time of presentation and utterance may properly be proved by introduction in evidence of a notice of protest of the check, or a certificate under oath of an authorized representative of the drawee declaring the dishonor, lack of account and insufficiency, and this proof shall constitute presumptive evidence of the dishonor, lack of account and insufficiency."

Today, we are called upon to address whether this relatively recent exception to the hearsay rule violates an accused's confrontation rights embodied in both the Sixth Amendment of United States Constitution and Article 21 of the Maryland Declaration of Rights. We hold that the admission of documentary evidence under Article 27, § 142(c), is neither per se unconstitutional nor unconstitutional under the facts of this case. We believe the evidence admissible under § 142(c) contains sufficient indicia of reliability so as not to offend a criminal defendant's right of confrontation.

---

1. Hereinafter all statutory references are to Maryland Code (1957, 1992 Repl.Vol.), Article 27 unless otherwise indicated.

## I.

In the evening of April 19, 1988, John Vernon Chapman entered the Sears, Roebuck & Co. catalogue store (Sears) in the Harford Mall. Chapman purchased a color television and a maintenance service agreement. The total purchase price for the sale was $315.49, including tax and shipping and handling charges. The assistant manager, Jean Hightower, was operating the cash register at the time of Chapman's purchase. Chapman tendered a check for $315.49, drawn on Fairfax Savings Bank, in exchange for the television and service agreement. Before accepting the check, Ms. Hightower requested identification from Chapman. Chapman gave her a Maryland driver's license. Ms. Hightower then examined the picture on the license and compared the signatures on the license and the check to verify Chapman's identity. Satisfied that the drawer of the check was indeed John Vernon Chapman, Ms. Hightower accepted the check and inscribed the license number on the back of the check. Chapman then departed the store with the television and service contract.

The next day, Sears deposited the check along with its other receipts for the day. Later, the bank notified Sears that Fairfax Savings Bank had dishonored the check on April 21, 1988. The depository bank returned the check to Sears marked "DO NOT REDEPOSIT." The face of the check also indicated that the account on which Chapman had drawn the check upon was closed. Sears made several attempts to contact Chapman at the telephone number and address printed on the check. Approximately a year later, on September 7, 1989, after all efforts to contact Chapman failed, Sears filed an "Application for Statement of Charges," and Chapman was subsequently charged with Obtaining Property or Services by Bad Check under Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 141.[2]

---

**2.** Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 141 provides in relevant part:

"**§ 141. Obtaining property or services by bad check—Acts constituting.**

Chapman was tried by jury in the Circuit Court for Harford County. At trial, the State's case consisted of the testimony of Ms. Hightower and two pieces of documentary evidence, the dishonored check and an "Affidavit as to Account Status" from Fairfax Savings Bank. Ms. Hightower testified that the dollar amount of the transaction exceeded $300.00, that Chapman was the drawer of the check and presented it to her in exchange for the merchandise, and that the bank ultimately returned the check as dishonored. Next, the State introduced the affidavit under Article 27, § 142(c) to establish that Chapman did not have an account with the bank when he wrote the check on April 19, 1988. The affidavit provided:

"TO: State's Attorney for Harford County
AFFIDAVIT AS TO ACCOUNT STATUS
RE: Account # 001150107     Drawer John V. Chapman
Check # 148
Amount $315.49       Payee Sears
Check Dated 4/19/88     Drawee (Bank) Fairfax Savings
Date Uttered: 4/19/88

I Michael L. Stockman, of Fairfax Savings ... at 17 Light St., Baltimore, Maryland do hereby make oath to the following facts:

1. That the above named drawer DID/DID NOT have the above numbered account with this bank on April 19, 1988.

\* \* \*

3. That the above referenced check was presented for payment on April 21, 1989.

4. That at the time of the presentation of the above referenced check there were INSUFFICIENT funds in the account and the said check was dishonored.

5. That I am an authorized representative of the above named financial institution.

Michael L. Stockman
(signature)"

A person is guilty of obtaining property or services by a bad check when:

(a)(1) As a drawer or representative drawer, he obtains property or services by uttering a check knowing that he or his principal, as the case may be, has insufficient funds with the drawee to cover it and other outstanding checks;

(2) He intends or believes at the time of utterance that payment will be refused by the drawee upon presentation; and

(3) Payment is refused by the drawee upon presentation;"

Chapman objected on the basis that the admission of the affidavit under § 142(c) violated his right of confrontation. In addition, Chapman argued that even if this was the type of hearsay that did not offend principles of confrontation, there was an apparent irregularity on the face of the document that cast sufficient doubt upon its reliability to necessitate the affiant's live testimony in this case. The trial judge overruled Chapman's objection and admitted the affidavit into evidence. The jury subsequently found Chapman guilty of obtaining property or services by bad check, and following imposition of sentence Chapman appealed to the Court of Special Appeals. We granted certiorari before the intermediate appellate court heard the case. *Chapman v. State,* 329 Md. 168, 617 A.2d 1085 (1993).

## II.

The question before this Court is whether the admission of the affidavit attesting to the status of his checking account under Article 27, § 142(c) violated Chapman's right of confrontation. In deciding this issue, we must examine the interrelationship of the hearsay rule and the Confrontation Clause. As the Supreme Court has noted, the common law rule against the admission of hearsay and the Confrontation Clause protect similar interests and are closely related. *See California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489, 495 (1970); *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213, 225–26 (1970). Both express a preference for a personal examination of a declarant as a means of testing the veracity and accuracy of a witness's testimony. *See Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597, 606 (1980); John W. Strong, 2 *McCormick on Evidence* § 245, at 93 (4th ed. 1992) (hereinafter "*McCormick on Evidence*") (stating rule against hearsay was designed to insure compliance with three conditions of oral testimony: oath, personal presence, and cross-examination). As a result of this close relationship, a legislature's

alteration of the hearsay rules may impinge upon Confrontation Clause protections. The important question, therefore, is at what point does the legislature's enactment of a new hearsay exception cross the threshold and impermissibly limit the exercise of essential components of the criminal justice system—confrontation and cross examination. Clearly, not every alteration of the common law scheme regarding the admissibility of hearsay will violate the Confrontation Clause. While the Supreme Court has noted that the prohibition against hearsay and the Confrontation Clause share common roots and protect similar values, it has been careful not to equate the two. *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 651 (1990); *Green,* 399 U.S. at 155, 90 S.Ct. at 1933, 26 L.Ed.2d at 495; *Dutton,* 400 U.S. at 86, 91 S.Ct. at 218, 27 L.Ed.2d at 225–26. Indeed, the Supreme Court has clearly cautioned against regarding the Confrontation Clause as "nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law." *Green,* 399 U.S. at 155, 90 S.Ct. at 1933–34, 26 L.Ed.2d at 495. By refusing to equate the protections of the Confrontation Clause with the common law rules regarding the admission of hearsay in criminal trials, the Supreme Court has allowed the states some latitude to create new exceptions to the hearsay rule. *See Green,* 399 U.S. at 171, 90 S.Ct. at 1941, 26 L.Ed.2d at 504 (Burger, C.J., concurring) (emphasizing "the importance of allowing the States to experiment and innovate.... If new standards and procedures are tried in one State their success or failure will be a guide to others and to the Congress.").

Legislative latitude in altering the hearsay rule, however, is not limitless. The United States Supreme Court, in *Ohio v. Roberts* and its progeny, has set out a general framework to determine whether the fundamental confrontation protections have been impinged upon. A legislature must comply with the principles embodied in the *Roberts* line of cases when modifying the rule governing hearsay in the context of a criminal trial. *Cf. People v. Denning,* 219 Ill.App.3d 428, 162 Ill.Dec. 129, 132–33, 579 N.E.2d 943, 946–47 (1991), *appeal denied,* 143

Ill.2d 641, 167 Ill.Dec. 403, 587 N.E.2d 1018 (1992); *People v. Rocha*, 191 Ill.App.3d 529, 138 Ill.Dec. 714, 721–22, 547 N.E.2d 1335, 1342–43 (1989), *appeal denied*, 131 Ill.2d 565, 142 Ill.Dec. 886, 553 N.E.2d 400 (1990); *State v. Myatt*, 237 Kan. 17, 697 P.2d 836, 842–43 (1985); *State v. Wright*, 751 S.W.2d 48, 51–52 (Mo.1988); *State v. Sosa*, 59 Wash.App. 678, 800 P.2d 839, 842–43 (1990); *see also* 2 *McCormick on Evidence* § 252, at 128.

■ In *Ohio v. Roberts*, the Supreme Court considered the constitutionality of the admission of hearsay under the traditional former testimony exception in a criminal proceeding, where the declarant was unavailable to testify. There the Court held that cross-examination of a hearsay declarant can be dispensed with when a party demonstrates: (1) the necessity of introducing the out-of-court statement, and (2) the out-of-court statement bears adequate indicia of reliability. The Court stated:

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the *Sixth Amendment establishes a rule of necessity*. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.[7]

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, *the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'* Snyder v. Massachusetts, [291 U.S. at 107, 54 S.Ct. at 333, 78 L.Ed. at 679]. The principle recently was formulated in Mancusi v. Stubbs [408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293]:

'The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely

viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' Dutton v. Evans, [400 U.S. at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' California v. Green, [399 U.S. at 161, 90 S.Ct. at 1936, 26 L.Ed.2d at 498]....'

[7] A demonstration of unavailability, however, is not always required. In Dutton v. Evans, 400 U.S. 74, 27 L.Ed.2d 213, 91 S.Ct. 210 (1970), for example, the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness...."

Roberts, 448 U.S. at 65–66, 100 S.Ct. at 2538–39, 65 L.Ed.2d at 607 (emphasis added) (citations omitted); see also Moon v. State, 300 Md. 354, 367, 478 A.2d 695, 701–02 (1984).

### III.

On appeal before this Court, Chapman contends that his rights of confrontation were abridged when the trial judge admitted hearsay evidence under § 142(c) at trial. Chapman asserts that evidence admitted under § 142(c) fails the two-prong test enunciated under Roberts. He argues that the introduction of evidence under § 142(c) violates the Confrontation Clause since it permits the introduction of unreliable hearsay evidence and does not require the State to establish the unavailability of the affiant before the introduction of the Affidavit as to Account Status. We disagree.

### A.

■ Contrary to Chapman's assertions, we believe evidence admitted under Article 27, § 142(c) generally possesses sufficient guarantees of trustworthiness so as to satisfy the reliability prong of Ohio v. Roberts. The Supreme Court has indicated "that the 'indicia of reliability' requirement could be met in either of two circumstances: where the hearsay statement 'falls within a firmly rooted hearsay exception,' or where it is supported by 'a showing of particularized guarantees of trustworthiness.'" Idaho v. Wright, 497 U.S. 805, 816, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638, 653 (1990) (quoting Roberts,

448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608). Where the hearsay in question falls within a "firmly rooted" hearsay exception "no independent inquiry into reliability is required. . . ." *Bourjaily v. United States*, 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 157 (1987). "Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements."[3] *Wright*, 497 U.S. at 817, 110 S.Ct. at 3147, 111 L.Ed.2d at 653 (citations omitted). However, where hearsay statements are admitted under an exception which is not considered "firmly rooted," then they are "presumptively unreliable and inadmissible for Confrontation Clause purposes" and must be excluded, at least absent a " 'showing of particularized guarantees of trustworthiness.' " *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514, 528 (1986) (quoting *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608). These guarantees of trustworthiness must be such that the evidence is "at least as reliable as evidence admitted under a firmly rooted hearsay exception" so as to assure "that adversarial testing would add little to its reliability." *Wright*, 497 U.S. at 821, 110 S.Ct. at 3149, 111 L.Ed.2d at 656 (citations omitted).

Article 27, § 142(c) does not qualify as a "firmly rooted" hearsay exception. As the Supreme Court has noted, the codification of a hearsay exception does not alone qualify it for a presumption of reliability. *See Wright*, 497 U.S. at 817–18, 110 S.Ct. at 3148, 111 L.Ed.2d at 654. If that were the case, the Confrontation Clause would become a shallow vessel

---

**3.** To date, the Supreme Court has indicated that several classic hearsay exceptions fall within the "firmly rooted" category. These include: dying declarations, prior testimony, business records, public records, excited utterances, statements made in seeking medical treatment, and co-conspirator statements. *See White v. Illinois*, — U.S. —, —, — n. 8, 112 S.Ct. 736, 742 n. 8, 116 L.Ed.2d 848, 859 n. 8 (1992); *Bourjaily v. United States*, 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 158 (1987); *Ohio v. Roberts*, 448 U.S. 56, 66 n. 8, 100 S.Ct. 2531, 2539 n. 8, 65 L.Ed.2d 597, 608 n. 8 (1980).

whose contents are subject to rapid evaporation by way of legislative enactment. Accordingly, we must probe the foundation of Article 27, § 142(c) to determine whether it bears sufficient guarantees of trustworthiness so "that 'there is no material departure from the reason of the general rule'" requiring cross-examination. *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2539, 65 L.Ed.2d at 607 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679 (1934)).

We recently discussed factors courts generally consider in determining the reliability of hearsay in *Bailey v. State,* 327 Md. 689, 612 A.2d 288 (1992). Although *Bailey* concerned the admissibility of hearsay in probation revocation proceedings, it provides a useful starting point for our analysis in the instant case. We noted in *Bailey* that it is "difficult for this Court to formulate any bright-line standards" with respect to determining the reliability of hearsay. *Id.,* 327 Md. at 700, 612 A.2d at 293. We did identify, however, several factors to which courts often look in determining whether admitted testimony bears sufficient indicia of reliability so as not to offend principles of confrontation.

> "These factors include: the presence of any additional evidence which corroborates the proffered hearsay; the type of and centrality of the issue that the hearsay is being offered to prove; and the source of the hearsay, including the possibility of bias or motive to fabricate. This is not an all-inclusive list, as other factors may affect a court's evaluation of reliability. Furthermore, the facts and circumstances of a particular case may undermine the trustworthiness of hearsay evidence that otherwise might enjoy a high degree of reliability." (Citations omitted).

*Id.*

In the instant case, the Affidavit as to Account Status, made admissible by § 142(c), is closely related to hearsay evidence routinely introduced under more traditional hearsay exceptions recognized in this State. Section 142(c)'s most apparent analog is Maryland's statutory business records hearsay ex-

ception, which provides for the admission into evidence of a "writing or record made in the regular course of business as a memorandum or record of an act, transaction, occurrence, or event ... to prove the act, transaction, occurrence, or event." Md.Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Art., § 10–101(b). Hearsay evidence admitted under the business records exception is generally regarded as reliable since any risk of "insincerity will be minimized, because the business will want accurate records to rely on," Lynn McLain, *Maryland Evidence* § 803(6).1, at 380 (1987) (hereinafter *Maryland Evidence*), and "[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision." 2 *McCormick on Evidence* § 286, at 265.

Section 142(c) is a direct derivative of the business records exception. The information contained in the affidavit is gathered from records the bank generates and maintains for its own use and upon which it relies to conduct its business, thus lending credibility to the information contained therein. Banks universally generate and maintain records concerning transactions affecting their customers' accounts, as well as the status of their customers' accounts. Ordinarily, a bank's records of its accounts would qualify under the business records exception as long as the information contained therein is reported by an employee with a business duty to report and recorded by an employee with a business duty to record the information. *See* Advisory Committee Notes to Fed.R.Evid. 803(6), 56 F.R.D. 183, 308–09 (1972) (indicating that where both source of information and maker of a business record operated under a duty of accuracy, due to their employment, that records ordinarily qualify under common law business record exception). In addition, there are circumstances where it may not be an abuse of discretion to admit business records even without the testimony of the records' custodian. As this Court held in *Pine St. Trading Corp. v. Farrell Lines, Inc.*, 278 Md. 363, 373, 364 A.2d 1103, 1110 (1976):

"While a foundation must be laid for the introduction of evidence under [the business records exception] statute, the foundation need not always consist of testimonial evidence,

and in some cases the court may properly conclude from *the circumstances and the nature of the document involved* that it was made in the regular course of business." (Emphasis added).

*Id.; see also Attorney Grievance Comm'n v. Keister,* 327 Md. 56, 74–75, 607 A.2d 909, 918 (1992).

We also note that several cases have held that 18 U.S.C. § 3505, which allows admission of foreign business records based on an affidavit of a foreign business employee attesting to veracity and source, does not violate a criminal defendant's right of confrontation. *See United States v. Sturman,* 951 F.2d 1466, 1489–90 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992); *United States v. Miller,* 830 F.2d 1073, 1077–78 (9th Cir.1987); *United States v. Gleave,* 786 F.Supp. 258, 279 (W.D.N.Y.1992); *United States v. Chan,* 680 F.Supp. 521, 522–25 (E.D.N.Y.1988). For example, in *United States v. Miller,* which involved the admission of a certificate of the records of a foreign bank under 18 U.S.C. § 3505, the Ninth Circuit found that such certificates bear adequate indicia of reliability. The court reasoned:

"Banks depend on keeping accurate records and although, as we all know, they err occasionally, their records are among the most common type of business record routinely used in our courts. The novelty of the statute is to admit the records without confrontation by the defendant with the recordkeepers. No motive is suggested that would lead bank officials to change, distort, or manipulate the records at issue here. The recordkeepers have, under criminal penalties in their own countries, asserted that the records are records kept in the course of business. Examination of the recordkeepers ... could not reasonably be expected to establish anything more or less than that."

*Id.,* 830 F.2d at 1077.

In enacting § 142(c), the General Assembly quite simply took legislative notice of the strong indicia of reliability accompanying bank records, but altered the traditional procedure of placing their contents into evidence in two ways. First, the

General Assembly decided to allow the State to forego the admission of the voluminous actual bank records and instead substitute a summary of the relevant information that those records would invariably reveal. Second, the General Assembly also decided to forego the need for testimony of the bank employee who prepared the account summary of the account in question. We believe that the General Assembly made a valid judgment in thus expanding the manner in which the State may prove an account's status, or its non-existence. These procedural "short-cuts" are well grounded and do not undermine the reliability and trustworthiness of data contained in account records created and maintained in the ordinary course of the bank's business. Rather, the General Assembly, in enacting § 142(c), invoked well-accepted evidentiary practices to prove the status of an account by means of an account summary or the lack of an account through the absence of entries in business records.

First, the information derived from the bank's records and contained in a § 142(c) affidavit concerning the status or lack of an account would also be admissible as an exception to the best evidence rule. Ordinarily, where documentary evidence is admissible into evidence, a party may not prove its contents with extrinsic evidence. Rather, the documents or records themselves must be introduced into evidence. This rule is not absolute, however, and parties may introduce summaries or compilations of voluminous or complex records, such as bank records, to prove the contents of otherwise admissible records. Such summaries of complex or voluminous records may take two forms: summations or compilations of what the records contain, *id.*, or statements as to what is *not* recorded in the records. *See generally Maryland Evidence* § 1006.1, at 545–46. As for the latter form, it is well established under Maryland law that a litigant may prove through negative inference, without the need of introducing the underlying records, the non-occurrence of an event or transaction from the absence of an entry in a business's records where such records normally contain like information. *Summons v. State,* 156 Md. 382, 386–87, 144 A. 497, 500 (1929); *Hutchinson v.*

*State,* 36 Md.App. 58, 62–64, 373 A.2d 50, 52–53 (1977). In *Summons v. State,* for example, the defendant was convicted of obtaining money by false pretenses. The defendant represented to an investor that he was selling stock of a corporation, that all the proceeds of the sale would go directly to that corporation, and that he maintained a sum of money to repay any dissatisfied investors. At trial, the State introduced testimony of a director of the corporation that the defendant was allegedly representing. The witness testified that "he examined and investigated the accounts and records of the company ... and found no record of any deposit or fund provided by the [defendant] for the purpose of the reimbursement of the stockholders; ... and that a complete personal examination failed to reveal any record that the [defendant] had turned in to the company the proceeds of the sale of any of its common stock." *Summons,* 156 Md. at 387, 144 A. at 499. In rejecting the defendant's objections to this testimony, the Court stated:

> "The objection to the testimony is that it is not the best evidence of the facts introduced; but we cannot agree with this contention, since the purpose was, not to establish the terms of the corporate records or accounts, but to establish facts about these documents other than their contents. The witness was giving primary evidence of facts within his personal knowledge as a result of the exercise of his own powers of observation. On this ground, or on that of the inconvenience of producing before the jury or trial court a large number of documents and accounts to be read and examined before a fact could be ascertained, a competent witness, who has investigated and is familiar with the contents of the entire mass, may testify that certain entries in the corporate records or accounts do not exist."

*Id.,* 156 Md. at 386–87, 144 A. at 500.

Section 142(c) deviates from the practice of using summaries of records in one way: the need to present a bank employee, as custodian of the records or as the one who prepared the summary, to lay the appropriate foundation. This deviation from the admission of the bank's business

records or summaries of those records, however, is not fatal to § 142(c). The General Assembly may properly excuse the testimony of an out-of-court declarant or custodian of records where it does not undermine the reliability of the proposed evidence, as it has for example in the case of public records under Md.Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Art., § 10–204. Under § 10–204 a court may admit a public record into evidence without the presence of the preparer of the record or custodian of records. Under the public records exception, records, reports, statements, or data compilations of public offices or agencies are admissible at trial absent circumstances indicating a lack of trustworthiness. *See Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 606, 612, 495 A.2d 348, 360–61, 363–64 (1985). Such public records are freely admissible into evidence, without testimonial sponsorship of the person who prepared the record or the record custodian, "if certified as a true copy by the custodian of the record...." § 10–204. As we reasoned in *Ellsworth*, the rationale underlying the assessment of trustworthiness attached to public records is "because of the reliability of the public agencies usually conducting the investigation, and 'their lack of any motive for conducting the studies other than to inform the public fairly and adequately.'" *Ellsworth*, 303 Md. at 607, 495 A.2d at 361 (quoting *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir.1984), in turn quoting *Kehm v. Proctor & Gamble*, 724 F.2d 613, 618–19 (8th Cir.1983)).

In essence, the General Assembly made a judgment when enacting § 142(c) that independent banking institutions, in the context of the criminal bad check provisions, should be treated as public or quasi-public agencies so that their affidavits are readily admissible without the necessity of calling the custodian of the records or those who generate summaries of those records. *Cf. State v. Rogers*, 177 N.J.Super. 365, 426 A.2d 1035, 1040 (1981) (affidavit of local government official stating that defendant had no permit for revolver in prosecution for possession of a revolver without a permit did not violate defendant's right of confrontation); *United States v. Cruz*, 492 F.2d 217, 220 (2d Cir.), *cert. denied*, 417 U.S. 935, 94 S.Ct.

2649, 41 L.Ed.2d 239 (1974) (holding admission of certificate of non-registration of destructive device, which recited that a diligent search was conducted and disclosed no registration, did not violate the defendant's right of confrontation). We find that, considering the nature of the banking industry, this judgment was sound and inherently reliable.

The banking industry possesses qualities that assure the same degree of accuracy as public records. As with public agencies, banks have strong incentives to generate and maintain accurate account records. The nature of their business, as well as state and federal regulation, require that banks meticulously record the transactions that affect their customers' accounts. Such information is the stock and trade of the banking industry. Additionally, the absence of an apparent motive of bank employees to fabricate also buttresses the General Assembly's decision to equate the banking industry with a quasi-public agency. This factor provides a guarantee of reliability in the context of public records and, as we found in *Bailey,* acts as an indicator of reliability of hearsay. *Bailey,* 327 Md. at 702–03, 612 A.2d at 293.

Chapman argues that no such indicia of reliability can be assumed in the instant case because the document was generated in anticipation of litigation. While it is true that documents that parties prepare for the purpose of litigation are often suspect because of their apparent self-serving ends, *see Maryland Evidence* § 803(6).1, at 382, such is not the case when a bank completes an affidavit of account status or notice of protest under Article 27, § 142(c). There is no enhanced motive for insincerity or fabrication under these circumstances. This is not the case where a party to the litigation generates a document for self-serving means. Rather, the bank, not the State, prepares the affidavits of account status. The bank has neither a position to advocate nor a stake in the outcome of a criminal trial. *See Howard v. United States,* 473 A.2d 835, 839 (D.C.1984) (finding admission of government's drug analysis reports did not violate defendant's confrontation rights since chemists conducted tests under routine circumstances and without interest in outcome of litigation); *State v.*

*Deanes,* 323 N.C. 508, 374 S.E.2d 249, 261–62 (1988), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2455, 104 L.Ed.2d 1009 (1989) (finding that introduction of medical test result of victim generated by a private lab, after initiation of criminal proceedings, did not violate defendant's right of confrontation where there was "absolutely no evidence that anyone at the lab had any knowledge of the criminal prosecution, or any motive to distort the truth if they had known of it."). Additionally, the form affidavit does not reflect a preconceived bias. The form affidavit is in the first instance an investigatory tool, whereby the bank may well provide information tending to establish the defendant's innocence, as well as his guilt. For example, the form allows the bank to indicate that on the date the defendant uttered the check, he or she had a valid account and that the account contained sufficient funds. The State does not simply send a bank a completed form and ask it to "rubber-stamp" it. Rather, the bank must perform an independent review of its records and fill out the form according to what its records show.

Finally, an additional factor that provides some indicia of reliability of a § 142(c) affidavit is the fact that it is corroborated by the dishonored check itself. An element of the bad check offense is that "[p]ayment [of the check] is refused by the drawee upon presentation." § 141(a)(3). Dishonored checks give some indication that there was insufficient money in the account to honor the check at the time of presentment.

Citing *Wright,* 497 U.S. at 820–24, 110 S.Ct. at 3149–51, 111 L.Ed.2d at 655–58, Chapman asserted at oral argument that it is inappropriate to consider corroborative evidence to bolster the reliability of an out-of-court statement under the Confrontation Clause. While Chapman's reading of *Wright* may be sound, we find *Wright* to be distinguishable from this case. In *Wright,* the defendant was tried for sexually abusing her two young daughters. At trial, the trial judge admitted testimony of a doctor who had examined both of the children. The testimony at issue regarded the out-of-court statements of the younger daughter concerning the acts of sexual abuse committed by her mother and her mother's boyfriend, Giles. The

trial judge found that the statements were admissible under Idaho's residual hearsay exception. The trial judge, taking into consideration the medical and physical evidence of sexual abuse and the in-court testimony of the older daughter, found that the hearsay testimony regarding the child's statements bore sufficient circumstantial guarantees of trustworthiness. *See State v. Giles,* 115 Idaho 984, 772 P.2d 191, 194–95 (1989); *State v. Wright,* 116 Idaho 382, 775 P.2d 1224 (1989) (both detailing lower court proceedings relating to *Idaho v. Wright* ).

The majority in *Wright* rejected the State's argument that " 'particularized guarantees of trustworthiness' should ... be based on a consideration of the totality of the circumstances, including not only the circumstances surrounding the making of the statement, but also other evidence at trial that corroborates the truth of the statement." *Id.,* 497 U.S. at 820, 110 S.Ct. at 3148, 111 L.Ed.2d at 655. The Court "agree[d] that 'particular guarantees of trustworthiness' must be shown from the totality of the circumstances," but stated that "the relevant circumstances include only those that surround the making of the statement...." *Id.* The Court reasoned that the use of other unrelated case specific corroborating evidence "to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial...." *Id.,* 497 U.S. at 823, 110 S.Ct. at 3150, 111 L.Ed.2d at 657.

In the instant case, using the fact that the drawee bank refused to pay the check upon presentation as corroboration for the reliability of the Affidavit as to Account Status is not constitutionally infirm under *Wright.* Section 142(c) creates a narrow hearsay exception which comes into play only where there has already been a dishonored check. *See* § 141(a)(3) (providing that fact "[p]ayment is refused by the drawee upon presentation" is an element of bad check offense); § 142(b)(1) (providing drawer of check is presumed to have intended or believed the check would be dishonored upon presentation where drawer had no account at time of utterance). It is only

after the drawee bank has refused payment, and a complaint has been filed, that the State's Attorney presents a § 142(c) affidavit to the bank to investigate whether a violation of the Bad Check statute has occurred. The dishonored check is thus a prerequisite to, and a component part of, the hearsay exception embodied in § 142(c). The fact that the drawee bank has refused payment of the check *is* part of the circumstances surrounding the genesis of the affidavit, and therefore constitutes permissible corroboration under *Wright.* Thus, the existence of the dishonored check properly provides further indicia of the affidavit's reliability.

In light of our analysis above, we reject Chapman's facial challenge to Article 27, § 142(c). We hold that out-of-court statements admitted under Article 27, § 142(c) bear sufficient "guarantees of trustworthiness" to satisfy the requirements of the Confrontation Clause. Considering § 142(c)'s adoption of familiar evidentiary principles, its close similarity to business and public records exceptions and the indicia of reliability associated with those exceptions, the lack of any apparent motive to fabricate, and the corroborative quality of the canceled check, we conclude that Article 27, § 142(c) is generally so reliable that "adversarial testing would add little to its reliability." *Wright,* 497 U.S. at 821, 110 S.Ct. at 3149, 111 L.Ed.2d at 656.

## B.

Next, Chapman asserts that admission of the Affidavit as to Account Status under § 142(c) fails the second prong of the *Roberts* standard since it does not require a showing of unavailability of the person who prepared the summary. Following the Supreme Court's *Ohio v. Roberts* decision, courts and commentators often interpreted *Roberts* to require a showing of both (1) the unavailability of the declarant or a demonstration of unsuccessful good faith efforts to secure the declarant's presence, and (2) that the proffered hearsay possessed adequate indicia of reliability. More recently, however, the Supreme Court has qualified its language in *Roberts* concerning what some have perceived as a strict unavailability

requirement. *See White v. Illinois,* —— U.S. ——, ——, 112 S.Ct. 736, 741–42, 116 L.Ed.2d 848, 857–60 (1992); *Bourjaily v. United States,* 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 157 (1987); *United States v. Inadi,* 475 U.S. 387, 392–94, 106 S.Ct. 1121, 1124–25, 89 L.Ed.2d 390, 396–97 (1986).

In the first of these cases, *Inadi,* the issue before the Court was whether the Confrontation Clause required a prior showing of unavailability of the hearsay declarant before the government could introduce an out-of-court statement of a co-conspirator under the co-conspirator exception to the hearsay rule.[4] The Court rejected the Third Circuit Court of Appeals' finding that *Roberts* requires the government to first demonstrate unavailability of a declarant as a constitutionally mandated prerequisite to admissibility of all forms of hearsay. The Court cautioned that *Roberts* should not be read "as an abstract answer to questions not presented in that case, but rather as a resolution of the issue the Court said it was examining: 'the constitutional propriety of the introduction of the preliminary hearsay testimony of a witness not produced at the defendant's subsequent criminal trial.'" *Inadi,* 475 U.S. at 392–93, 106 S.Ct. at 1125, 89 L.Ed.2d at 397 (quoting *Roberts,* 448 U.S. at 58, 100 S.Ct. at 2535, 65 L.Ed.2d at 602). According to the Court, "*Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable." *Id.,* 475 U.S. at 394, 106 S.Ct. at 1125, 89 L.Ed.2d at 398.

The Court in *Inadi* then distinguished between evidence admitted under the co-conspirator and the former testimony

---

4. The decision in *Inadi* concerned Fed.R.Evid. 801(d)(2)(E) which, unlike the common law, defines statements of co-conspirators made in the furtherance of the conspiracy as non-hearsay. Under the common law of Maryland, out-of-court statements of co-conspirators constitute hearsay and are admissible under the co-conspirator exception to the hearsay rule. *See Maryland Evidence,* § 801(5).2, at 332 (contrasting admission of co-conspirator statements under Maryland common law and Fed.R.Evid. 801(d)(2)(E)). This distinction, while academically correct, is irrelevant for Confrontation Clause purposes, however.

exceptions. With respect to the former testimony exception, the Court reasoned:

"Unlike some other exceptions to the hearsay rules, ... former testimony often is only a weaker substitute for live testimony. It seldom has independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version.... But if the declarant is unavailable, no 'better' version of the evidence exists, and the former testimony may be admitted as a substitute for live testimony on the same point."

*Id.*, 475 U.S. at 394–95, 106 S.Ct. at 1126, 89 L.Ed.2d at 398. The Court then explained that the same principles do not apply to co-conspirator statements. Unlike the prior testimony context, the government is not faced with a choice between two forms of evidence to prove the same point. Co-conspirator statements, the Court reasoned, cannot be replicated at trial. Such statements "derive much of their value from the fact that they are made in the context very different from trial, [during the course of the conspiracy,] and therefore are usually irreplaceable as substantive evidence." *Id.*, 475 U.S. at 395–96, 106 S.Ct. at 1126, 89 L.Ed.2d at 399. Furthermore, the Court determined that the burdens on the criminal justice system associated with mandating a rule of unavailability in this context outweighed any foreseeable benefits. *Id.*, 475 U.S. at 399–400, 106 S.Ct. at 1128, 89 L.Ed.2d at 401.

In *White v. Illinois*, the Court reaffirmed *Inadi*'s clarification of *Roberts*. In *White*, the Court again stated that the unavailability requirement established in *Roberts* does not apply to all forms of hearsay. *White*, —— U.S. at ——, 112 S.Ct. at 741–42, 116 L.Ed.2d at 858. The Court held that, as with the co-conspirator statements addressed in *Inadi*, the Confrontation Clause does not require an initial showing of unavailability prior to admitting out-of-court statements which are spontaneous declarations or are made for the purposes of

attaining medical diagnosis or treatment as substantive evidence for the State's case. *White,* —— U.S. at ——, 112 S.Ct. at 743, 116 L.Ed.2d at 859–60. In reaching this conclusion, the Court noted that such out-of-court statements "are made in contexts that provide substantial guarantees of their trustworthiness," and that the "same factors that contribute to the statements' reliability cannot be recaptured even by later in-court testimony." *Id.,* —— U.S. at ——, 112 S.Ct. at 742, 116 L.Ed.2d at 859.

With *Inadi* and *White,* it appears that the Supreme Court has emphasized that *Roberts* contemplated a rule of necessity, not one of unavailability. *Accord Moon v. State,* 300 Md. 354, 366, 478 A.2d 695, 701 (1984), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985) (exceptions to rule requiring cross-examination permitted in past only " 'after close scrutiny has disclosed that this type of *evidence is both necessary and so intrinsically reliable* that it need not be subjected to the rigors of cross-examination' " (emphasis in original) (quoting *State v. Collins,* 265 Md. 70, 78, 288 A.2d 163, 167 (1972)); *State v. Roby,* 463 N.W.2d 506, 509 (Minn.1990) (stating that Confrontation Clause analysis entails inquiry into necessity of hearsay evidence and its reliability). In both *Inadi* and *White,* the Court focused on the *necessity* of admitting at trial the type of out-of-court statement, and whether that need was outweighed by the benefit to the criminal defendant of requiring the government to present the out-of-court declarant. Furthermore, the *Inadi* Court even recast *Roberts* in terms of necessity. It made clear that where both live testimony and hearsay testimony are available to prove the identical point, the Confrontation Clause favors the production of the live testimony at trial, rather than permitting what is most convenient for the government to produce. The Court indicated that unavailability of a hearsay declarant may be one way the State may establish the necessity of introducing the out-of-court statement, but it is not the exclusive way.

In light of the Supreme Court's subsequent clarification of *Roberts,* we must reject Chapman's argument that, since § 142(c) does not require a prior showing of unavailability, it

is per se unconstitutional. While unavailability of a declarant may be required in some instances, as we shall explain, this is not such a case.

Under § 142(c) and other compilations and summaries of official and business records, there are two distinct classes of out-of-court declarants: (1) the persons who generated each individual document that comprises the organization's records, and (2) the persons who reviewed the contents of those records and state a conclusion as to what those records reveal. Although Chapman fails to indicate to which class of declarants he believes an unavailability requirement should apply, we find that a showing of unavailability is not required in either case. First, it is beyond dispute that a litigant need not establish the unavailability of those who generate the individual entries in a business's or agency's records. *See Roberts,* 448 U.S. at 67 n. 8, 100 S.Ct. at 2539 n. 8, 65 L.Ed.2d at 608 n. 8 (indicating both business records and official records exceptions are "firmly rooted" exceptions to the hearsay rule); *State v. Garlick,* 313 Md. 209, 225–26, 545 A.2d 27, 30 (1988) (holding hospital record admissible in a criminal case under the business records exception without testimony of hospital employee who made entry into patient's medical records); *Bowers v. State,* 298 Md. 115, 136–37, 468 A.2d 101, 112 (1983) (holding that admission of autopsy report under business records exception did not violate defendant's right of confrontation without testimony of medical examiner who prepared the report). In such instances, the routine nature of the task, while bolstering reliability of the document, also decreases the probability that the declarant will remember the events memorialized in the entry. *See State v. Sosa,* 59 Wash.App. 678, 800 P.2d 839, 843 (1990) (lab experts who prepare reports are unlikely to recall details of routine report completed weeks before trial). This fact satisfies the necessity prong, since the cross-examination of the declarant would likely be futile and the most accurate evidence of the event is the affidavit itself.

Likewise, the Confrontation Clause does not require a showing of unavailability with respect to the out-of-court statements of those bank employees who summarize those records.

Once again we find instructive the General Assembly's classification of banks as quasi-public agencies. In general, summaries prepared by a government official from public records do not violate the Confrontation Clause regardless of the availability of the official who generated the summary. *See, e.g., Rogers,* 177 N.J.Super. 365, 426 A.2d at 1040; *Cruz,* 492 F.2d at 220; *see also Roberts,* 448 U.S. at 67 n. 8, 100 S.Ct. at 2539 n. 8, 65 L.Ed.2d at 608 n. 8 (indicating official records exception, which includes data compilations, is a "firmly rooted" exception to the hearsay rule). The rationale underlying excusing the testimony as a condition of admissibility is the " 'assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently from the record.' " *Ellsworth,* 303 Md. at 606, 495 A.2d at 361 (quoting Fed.R.Evid. 803(8) advisory committee's note). Additionally, public policy disfavors the disruption of public agencies by requiring them to testify on a regular basis concerning matters contained in their records. 2 *McCormick on Evidence* § 295, at 289.

Similar policies that underlie the official records exception to the hearsay rule also support § 142(c). First, in light of the great reliability accorded the banking records and the absence of any motive on the part of the bank employees to fabricate, the General Assembly could legitimately assume that the bank would accurately complete its task of examining and summarizing its records. Additionally, the very purpose of § 142(c) was to avoid the unnecessary burdening and disruption of the banking system by requiring the bank to present ministerial witnesses to carry to court a bank's business records. Furthermore, these decisions are buttressed by the limited utility that cross-examination of a record's custodian would provide the criminal defendant in a bad check prosecution. Bank employees generate and utilize the bank's records with great frequency. With the routine of repetitive examination of the bank's records comes the probability that the details concerning any given transaction will fade. The affidavit recording the summary of the account, that the bank employees contemporaneously generate, might even constitute better evidence

than the subsequent live testimony of the witness who examined the records. The live custodian could say little more than the affidavit—"I searched the record and this is what I found." Cross-examination is, thus, unlikely to clarify the record or jog the declarant's memory beyond the recorded information in the affidavit.

Due to the limited utility to criminal defendants of cross-examining bank employees and the substantial burden to banks associated with it, we find that the Confrontation Clause does not require the State to establish the unavailability of the bank employee who compiled the Affidavit as to Account Status. Accordingly, we hold that Article 27, § 142(c) does not violate the mandates of the Confrontation Clause by omitting such an unavailability requirement. Finally, we also point out that if Chapman believed there was anything in the bank records that would have aided his defense, he was free to subpoena those records.

## IV.

Chapman's final argument focuses on the specific affidavit admitted under Article 27, § 142(c). Chapman points to the fact that the affidavit incorrectly states that the check was presented for payment on April 21, 1989, when in fact it was presented on April 21, 1988. Relying on *Moon v. State,* 300 Md. 354, 478 A.2d 695 (1984), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985), Chapman argues that there was an obvious error on the face of the affidavit and, as such, it "cannot be said to have such indicia of reliability as would justify the abridgement of [his] right under the State and federal constitutions." We disagree and reject his contention.

At trial, Chapman contended that the obvious error in the affidavit regarding the date of presentation undermined its reliability and made it inadmissible under *Moon.* The trial judge disagreed, however, and admitted the affidavit over Chapman's objection. The trial judge reasoned:

"I think considering the totality of the circumstances the check itself indicates . . . it was presented on April 21st

1988 ... it was deposited April the 20th, [with] the second presentment on April the 21st. So, the most important evidence is that the check itself indicates that.... I think basically it's a scrivener's error and based on the totality of the evidence and including the witness testified that the check was returned promptly indicates that it was a mistake.... I'll overrule the objection...."

Upon review of the affidavit admitted at Chapman's trial we conclude that the obvious single typographical error in the affidavit does not undermine the reliability of its otherwise trustworthy hearsay. Unlike the report submitted in *Moon*, the affidavit submitted at Chapman's trial was not marred by discrepancies that undermined its reliability. The trial judge did not err in relying on the dishonored check, which was in evidence, and concluding that the Affidavit as to Account Status was trustworthy, despite the presence of an obviously typographical error. The check was also in evidence. In accordance with banking industry practice, each bank that handled the check stamped the back of the instrument with a date on which it handled the check. The check Chapman uttered contained two such stamps: (1) from the collecting bank in which Sears initially deposited the check dated April 20, 1988; and (2) the drawee bank which received the check for presentment on April 21, 1988. It is clear that the date of presentment in the affidavit was not substantive and was merely a typographical error. The hearsay affidavit of the bank was admissible to establish the status of Chapman's account.

*JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.*