McDONALD, J.,
concurring in the judgment in part and dissenting in part, which ADKINS, J., joins.
I would decide these two appeals differently. The purchase of a debt from the original creditor and the pursuit of its collection in the District Court is a legitimate economic enterprise. But the prosecution of a collection action by a debt buyer should conform to the standards of fairness normally required by our rules and constitutions. My disagreement with the Majority arises from three considerations.

Some Considerations in Deciding These Cases

Whether There are Different Standards of Proof for Summary Disposition and Trial

The summary disposition rule in the District Court — i.e., judgment by affidavit under Maryland Rule 3-306 — spells out specific requirements for the contents of affidavits in debt buyer cases.[1] These requirements were explicitly designed to satisfy the business records exception to the hearsay rule,[2] a principle that is not only codified in Maryland Rule 5-803(6), but that has long been a part of the common law as well as other statutes and rules.[3] Thus, as the Majority opinion *292 acknowledges,[4] a debt buyer plaintiff must satisfy the business records exception to prevail if a defendant does not respond to the complaint. As the Majority opinion also acknowledges,[5] if the defendant files a notice of intention to defend but fails to appear for trial, the court is still to consider whether the debt buyer plaintiff has met the requirements of Rule 3-306. See Maryland Rules 3-306(e), 3-509(a).
Under the Majority’s approach, it is only when the defendant puts the debt buyer plaintiff to its proof that the rules are relaxed for the plaintiff. It is not self-evident why there would be a lesser standard of proof when the allegations of the complaint are contested and a trial must be held at which the plaintiff still bears the burden of proof. I would not relax the normal standard of proof when the plaintiffs case depends entirely on the reliability of certain records, some of which originated with the plaintiff and some of which the plaintiff purchased from a third party, and about which there may be legitimate questions as to their trustworthiness.

Whether Bank Records are Always Inherently Reliable

Second, in affirming the judgments in these cases, the Majority opinion notes that this Court in Chapman v. State, 331 Md. 448, 628 A.2d 676 (1993), characterized bank records as having “strong indicia of reliability.” Majority op. at p. 284, 91 A.3d at 1144. That case was a criminal prosecution in which the bank was simply a witness and had no stake in the outcome — unlike a collection case involving a debt allegedly owed to a bank.[6] Indeed, this Court made just that point in Chapman:
While it is true that documents that parties prepare for the purpose of litigation are often suspect because of their *293 apparent self-serving ends, such is not the case when a bank completes an affidavit of account status [in a bad check prosecution]. There is no enhanced motive for insincerity or fabrication under these circumstances. This is not a case where a party to the litigation generates a document for self-serving means.... The bank has neither a position to advocate nor a stake in the outcome of a criminal trial.
Chapman v. State, 331 Md. at 464, 628 A.2d 676 (emphasis added) (citations omitted).
As the Federal Trade Commission has found, banks that sell debt accounts to debt buyers often disclaim the reliability of the records and accounts that they are providing to the debt buyer. Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (2013) at p. 25; see also Holland, Junk Justice: A Statistical Analysis of 4,400 Lawsuits Filed by Debt Buyers, 26 Loyola Consumer L.Rev. 179, 193-94 & nn. 45, 50 (2014). It seems odd to accord special reliability to those records when the business that actually created and maintained them may have disclaimed their reliability.
In addition, in Chapman and in the other cases cited by the Majority opinion involving business records, the courts appropriately qualified their holdings by noting that records that otherwise satisfy the conditions of the business records exception are not admissible if circumstances concerning their source or preparation indicate that they lack “trustworthiness.” [7] As this Court has frequently stated, the key mechanism for testing trustworthiness in our adversary system is cross-examination.[8]

Whether There Should be an Opportunity for Cross-Examination

Finally, under the Majority’s approach, a defendant may be precluded from any opportunity to cross-examine the plain *294 tiffs witnesses. It is true that small claims trials under Rule 3-701 are to be conducted informally, but that does not mean that “anything goes” — in particular, that a party that has the burden of proof can avoid having any of its evidence tested through cross-examination. As the Majority opinion notes, the primary purpose of small claims courts is to provide greater access to justice. Majority op. at pp. 273-74, 91 A.3d at 1138. That goal involves not only increasing the efficiency of the judicial system, but also “increasing the access of the poor to equal justice.” Eric H. Steele, The Historical Context of Small Claims Courts, 6 Am. B. Found. Res. J. 293 (1981). Rule 3-701, and its predecessor rule,[9] was designed to permit the efficient resolution of small claims in which one or both parties were without lawyers, and thereby to make the justice system more accessible for low income and unrepresented parties. It was not meant to allow institutional parties to shield themselves from cross-examination.[10]
In sum, we should not decide these cases by according special reliability to the business records offered by one party to a dispute, particularly when they belong to a third party and there may be a legitimate question as to their accuracy, and certainly not without the possibility of cross-examination.[11] These considerations bring me to the same place as the Court in one case, but to a different outcome in the second case.

*295
Deciding These Cases

Bartlett

In the trial of the Bartlett case, Mr. Bartlett himself was called as a witness by PRA in its own case. He conceded the existence and the amount of his debt to Chase Bank. In light of this corroboration, there is no reason to doubt the accuracy of the information set forth in the records from Chase Bank.
A representative of PRA also testified and was cross-examined concerning PRA’s records in the Circuit Court. The Circuit Court itself noted that PRA’s witness was present and subject to cross-examination. Trial Transcript at p. 16 (“You have the full ability to plumb the testimony and expose whether it’s based upon reliable and probative evidence, or not.”). In finding that PRA had proven its ownership of Mr. Bartlett’s debt to Chase Bank, the Circuit Court relied on the testimony of PRA’s representative, although the Court expressed skepticism about some aspects of that testimony. Id. at p. 129.
In light of the corroborating evidence of the debt, it was not necessary for PRA to prove its existence and amount solely through the business records of Chase Bank. The witness sponsoring PRA’s business records testified and was available for cross-examination. The conclusions drawn by the Circuit Court were not clearly erroneous. Accordingly, I would affirm the judgment of the Circuit Court, although not on the basis stated in the Majority opinion.

Townsend

The Townsend case is a different matter.
Midland appeared at trial in both the District Court and the Circuit Court without any witnesses and attempted to prove its case simply by submitting an affidavit and copies of various documents. The affidavit of its absent agent — Ashley Lashinski, an employee of a Midland affiliate — did not specifically identify the documents that comprised Midland’s proof, perhaps because those documents differed in the two courts.[12]
*296 One of the key exhibits that accompanied the affidavit in both courts was a redacted “bill of sale” that purportedly documented the sale of certain debts by Chase Bank, including the debt attributed to Mr. Townsend, to Midland. This bill of sale was apparently an exhibit to a purchase and sale agreement that was not itself submitted to the courts below.[13] While the bill of sale recites statements similar to the requirements of the business records rule, it is not an affidavit, the statements are not made under oath, and it is not clear to whom those statements are to be attributed — i.e., who would be cross-examined by a defendant who wished to test the truth of those assertions. In any event, the redacted bill of sale submitted with Ms. Lashinski’s affidavit contained no reference to Mr. Townsend’s account — or any other account, for that matter.[14]
The District Court judge noted the gap in Midland’s proof— none of the records submitted in the District Court actually documented that Mr. Townsend’s debt had been sold to Midland — but was willing to find that Midland had covered that gap, by a preponderance of the evidence, through a reference to Mr. Townsend’s Chase account number in Ms. Lashinski’s affidavit. The Circuit Court similarly relied on Ms. Lashinski’s affidavit to conclude that Midland had satisfied the requirements of Rule 3-306[15] and proven its claim by a *297 preponderance of the evidence. Thus, even if one accepted the proffered bank records as business records of Chase Bank simply because they contained a bank logo, they could not advance Midland’s claim without the testimony of Ms. Lashinski, who did not appear at either trial and therefore was not subject to cross-examination.
The Majority opinion only briefly addresses the possibility that due process would require an opportunity to cross-examine Ms. Lashinski, citing the Bo Peep case for the proposition that an administrative agency may base a decision on hearsay evidence. Majority op. at pp. 289-90 n. 17, 91 A.3d at 1147-48 n. 17 citing Maryland Department of Human Resources v. Bo Peep Day Nursery, 317 Md. 573, 565 A.2d 1015 (1989). In Bo Peep, the hearsay evidence consisted of certain statements made by children concerning acts of abuse allegedly committed against them. However, in contrast to this case, in Bo Peep the adult witnesses who introduced that hearsay into evidence were all subject to significant cross-examination at the hearing, as the Bo Peep opinion recounts at some length. See Bo Peep, 317 Md. at 586-95, 565 A.2d 1015. Indeed, in Bo Peep this Court favorably contrasted the procedures in the case before it — in which there was cross-examination — with another case in which there was “no opportunity for cross examination” and the proceedings thereby lacked “fundamental fairness.” Bo Peep, 317 Md. at 598-601, 565 A.2d 1015 describing Rogers v. Radio Shack, 271 Md. 126, 314 A.2d 113 (1974). In Mr. Townsend’s case, no one from Midland was available for cross-examination. If the trial of this case had proceeded similarly to the administrative hearing in Bo Peep, Ms. Lashinski (like the adult witnesses in Bo Peep through whom the hearsay was admitted) would have been available for cross-examination when she laid the foundation for the introduction of hearsay statements in the Midland and Chase Bank records under the business records exception.
On its face, Ms. Lashinski’s affidavit raises some obvious questions that might be explored on cross-examination. Her affidavit speaks generally of her familiarity with Midland’s records and makes certain assertions about amounts owed by *298 Mr. Townsend to Chase Bank, but says nothing specifically about the bill of sale or other documents attached to her affidavit. Nor does her affidavit indicate whether Midland has records related to the account that were not attached to the complaint or her affidavit — e.g., the purchase and sale agreement for which the bill of sale identifies itself as an “exhibit”— and whether the omitted records contain any disclaimers or other representations concerning the accounts or the records.
It may be that Ms. Lashinski could have answered any questions that Mr. Townsend’s counsel might have posed in a way that advanced Midland’s case. But we do not know because, without a witness to cross-examine, the defendant never had that opportunity.[16] Under the Majority’s holding, an affidavit that failed to provide sufficient support for summary disposition under Rule 3-306 could be used to prevail at trial without affording the defendant any opportunity to cross-examine the affiant or other representative of the plaintiff, who has the burden of proof, about the defects in the affidavit. As federal courts have noted in two recent cases involving Midland, when the documentary evidence of a sale of a debt is incomplete, “the possibility of a debt collector attempting to collect a debt that it does not actually own, either through assignment or otherwise, is very real.” Henggeler v. Brumbaugh & Quandahl, P.C., LLO, 894 F.Supp.2d 1180, 1188 (D.Neb.2012) quoting Webb v. Midland Credit Management, Inc., 2012 WL 2022013 (N.D.Ill.2012) at *5 n. 8. Even if the statements in the Lashinski affidavit had been sufficient to *299 admit all of the records under the business records exception, the defendant should have an opportunity to cross-examine a witness who establishes the prerequisites to the business records exception. Accordingly, I would reverse the judgment in the Townsend case and remand for a new trial.

Summary

It may be that, in most debt buyer cases, the defendant owes the debt and the debt buyer owns the debt. But that is not a reason to discard the normal standards of proof, forgive gaps in the debt buyer’s own records, and treat certain bank records as infallible, particularly when a bank itself may have disclaimed their accuracy. It is ironic that a trial process designed to allow unrepresented lay people to find justice in the legal system, and a rule on summary disposition designed to require debt buyer plaintiffs to satisfy the business records exception to the hearsay rule, have been transformed into a streamlined debt collection process under which a sophisticated institutional litigant avoids even the possibility that its evidence will be subject to testing by cross-examination.
Judge ADKINS joins this opinion.

. As the Majority opinion correctly notes, the amended version of Rule 3-306 did not technically apply to the Townsend case, although the parties and the courts below apparently used it as a benchmark. See Majority op. at p. 269 n. 6, 91 A.3d at 1135 n. 6. The amendments became effective as of January 1, 2012, while the complaint in the Townsend case was filed on December 22, 2011.

. See Transcript of Rules Hearing of Court of Appeals (July 1, 2011) at pp. 94-95.

. See L. McLain, Maryland Evidence (1987) at pp. 376-84.

. Majority op. at pp. 279-80, 91 A.3d at 1141-42.

. Majority op. atpp. 280-81 n. 12, 91 A.3d at 1142 n. 12.

. Chapman was a prosecution for obtaining a television from a department store by means of a bad check. The statutory basis for admitting bank records in that case was unique to "bad check” cases — a provision that currently is codified in Maryland Code, Criminal Law Article, § 8-104(c).

. E.g., Department of Public Safety and Correctional Services v. Cole, 342 Md. 12, 31, 672 A.2d 1115 (1996).

. See, e.g., Myer v. State, 403 Md. 463, 477, 943 A.2d 615 (2008).

. Maryland District Court Rule 568.

. I agree with the statement in Judge Watts’ concurring opinion that the right of cross-examination may be a fundamental element of due process in a small claims case. Concurring Opinion of Judge Watts, op. at 302-03, 91 A.3d at 1155-56. I disagree as to whether it can be dispensed with in these cases.

. This consideration would not establish different rules for institutional parties and pro se individuals, but rather is based on the nature of the evidence being proffered. Were a pro se party to purchase a debt from a third party creditor, file suit to collect it, and attempt to prove the existence and ownership of the debt on the basis of the third party’s records alone without any opportunity for cross-examination of anyone, the rule should be the same.

. Although the same affidavit, signed by Ms. Lashinski and dated November 18, 2011, was submitted in both the District Court and the *296 Circuit Court, an additional document was attached to the affidavit in the Circuit Court — raising the question as to what, if any, documents were attached to the affidavit when Ms. Lashinski executed it.

. Notably, the missing purchase and sale agreement is the type of document in which a bank typically disclaims the reliability of the records it provides to the debt buyer. See Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (2013) at pp. 24-25.

. While Rule 3-306(d)(3) contemplates that a bill of sale may be redacted, the bill of sale should at least contain the terms of the sale and a "specific reference to the debt sued upon.” Rule 3-306(d)(3), Committee note. Midland apparently attempted to remedy this problem by submitting an additional document with the affidavit in the Circuit Court.

. This may not be entirely correct — Ms. Lashinski’s affidavit and attachments do not appear to contain account charge-off information or licensing information. See Maryland Rule 3-306(d)(6)-(8).

. It is the opportunity for cross-examination that is critical. Ordinarily, when a party seeks to admit business records without a live witness, it must provide notice to the opposing party. See Maryland Rule 5-902(b). This allows the opposing party to object or to subpoena the witness itself if it wishes to cross-examine that witness. See L. McLain, Self-Authentication of Certified Business Records, 24 U. Balt. L.Rev. 27, 59-60, 72 (1994) (Maryland rule allowing admission of business records without live witness likely constitutional because of advance notice provision and provision that rule does not apply when circumstances indicate a "lack of trustworthiness”). Under the procedure approved by the Court in this case, a debt buyer plaintiff need not provide any notice that it intends to prove its case without any witnesses available for cross-examination.